ILLINOIS FOUNDERS INSURANCE COMPANY, Plaintiff-Appellant, v. MAMIE L. BARNETT, Defendant-Appellee.

First District (1st Division)   No. 1—98—2889

Opinion filed March 29, 1999.

Beerman, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker, of counsel), for appellant.

George S. Spataro, of Chicago, for appellee.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
Plaintiff, Illinois Founders Insurance Company, appeals the circuit court's entry of judgment against it in a declaratory action to determine plaintiff's obligations under a general liability policy issued to Tony Savage, d/b/a Kathy's Liquors. Plaintiff claims that the circuit court improperly found that it received actual notice of a lawsuit filed by defendant Mamie Barnett against Tony Savage which triggered its duty to defend under the insurance policy. Plaintiff additionally claims that the circuit court erred in determining that the employee injury exclusion of the policy did not apply to Barnett.

## I. FACTS
The following facts were established at trial. Tony Savage, d/b/a

Kathy's Liquors, owned and operated Kathy's Liquors store. On February 8, 1991, Tony Savage (Savage) purchased a general liability insurance policy for the liquor store from plaintiff. The insurance policy was valid for one year. Prior to 1991, Savage and Mamie Barnett (Barnett) had been friends for 25 years. During this time period, Barnett and Savage participated in many social activities together and had an intimate relationship. Savage, on approximately six occasions, asked Barnett to watch or run the liquor store for him as a·personal favor. When Barnett watched the store, she did not receive money compensation. Savage, however, on occasion gave Barnett groceries from the store for either watching the store or because of their friendship.

On December 1, 1991, Savage asked Barnett to watch the store for him because he had to run an errand. Barnett agreed and Savage provided her with keys to the store and cab fare. Barnett opened the store in the morning and assisted customers. On that same day, an intruder entered the store, attacked Barnett and injured her. Barnett received no compensation for her duties at the liquor store on the day she was attacked.

Eight days after Barnett was attacked, on December 9, 1991, Guild Insurance Agency, Inc. (Guild), the insurance broker that placed Savage with plaintiff, sent a loss notice to plaintiff informing it of the incident where Barnett was attacked and injured. The loss notice informed plaintiff of the date of the loss and specific facts of the loss. On December 13, 1991, plaintiff acknowledged that it received notice of the loss and subsequently contacted and forwarded claim forms to its insured, Savage. On December 21, 1991, immediately after her release from the hospital, Barnett called both Guild and plaintiff and discussed her claims with them. Plaintiff conceded it received prompt notice of the claim.

Plaintiff additionally retained the investigative firm of Wallrub, Copengiro & Associates, Inc. (Wallrub), to help with the Barnett claim. On March 4, 1992, three months after Barnett was attacked, Wallrub's investigators interviewed Barnett and Savage, obtained a written statement from them, took photographs of the store, collected other information and documents and provided this information and claim reports to plaintiff. Plaintiff's investigator also told Barnett that he worked for either plaintiff or Guild.

On October 28, 1993, Barnett filed a personal injury lawsuit against Savage, Kathy's Liquors, James Cole, and King Roofing and Construction for the injuries she sustained on December 1, 1991, at Savage's store. Barnett's attorney, on November 9, 1993, within two weeks of filing Barnett's civil case, wrote to both Guild and Wallrub informing them of Barnett's civil suit, enclosing copies of the filed

complaint and asking them to forward all of this information to plaintiff. Plaintiff acknowledged receiving notice of suit from Guild on other matters in the past. On March 9, 1994, Savage was served with summons in the personal injury lawsuit and on April 26, 1994, the court entered a default order against Savage.

On May 30, 1996, Barnett's attorney sent by facsimile to plaintiff copies of the original complaint, Barnett's first amended complaint and the default order against Savage. Robert McKenna, plaintiff's vice-president of claims, testified that this was the first time that plaintiff received notice of Barnett's personal injury lawsuit against Savage. Plaintiff then retained counsel to defend Savage in the lawsuit. Savage's counsel moved to quash service of summons on Savage. The court denied that motion but vacated the default order against Savage and allowed him to answer or otherwise plead to Barnett's second amended complaint.

After testimony and arguments, the circuit court in this case found that plaintiff received notice of the lawsuit through Barnett's attorney's letters and copy of the filed complaint sent to Guild and Wallrub in compliance with the insurance policy. The circuit court further found that Barnett was not an employee of Savage at the time she was injured and thus was not excluded from coverage. Plaintiff appeals judgment on both counts of the declaratory action in favor of Barnett and against plaintiff.

## II. NOTICE OF LAWSUIT

Plaintiff first contends on appeal that because it did not receive notice of the Barnett lawsuit until May 30, 1996, it is relieved from any duty to defend and indemnify Savage. The insurance policy at issue states as follows:

"4. Insured's duties in the event of suit:
\*\*\*

(b) If a claim is made or a suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or process received by him."

Plaintiff acknowledges that Barnett's counsel sent notice of the lawsuit to Guild and Wallrub in a timely manner. Plaintiff, however, asserts that since Barnett's attorney knew that plaintiff was the insurance carrier, Barnett's attorney was required to notify plaintiff directly of the lawsuit to trigger plaintiff's duty to defend and indemnify Savage. In the alternative, plaintiff argues that any notice that Barnett's attorney sent to Guild and Wallrub did not comply with the insurance policy because Savage had yet to be served with summons and Barnett's attorney did not provide plaintiff with a copy of the summons served on Savage.

■ The issue of whether an insurance company received actual notice that a lawsuit was filed is a question of fact. *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 808, 690 N.E.2d 1067 (1998). Where, as here, the trial court heard witness testimony and made a factual determination, its decision will not be reversed unless it is against the manifest weight of the evidence. *Muller v. Firemen's Fund Insurance Co.*, 289 Ill. App. 3d 719, 724, 682 N.E.2d 331 (1997).

■ An insurer has an obligation to defend under an insurance contract if it has actual notice of a lawsuit. *Federated Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 282 Ill. App. 3d 716, 726, 668 N.E.2d 627 (1996). Actual notice means notice from "any source sufficient to permit the insurer to locate and defend its insured." *Insurance Co. v. Federal Kemper Insurance Co.*, 291 Ill. App. 3d 384, 388, 683 N.E.2d 947 (1997). Likewise, compliance with a "prompt notice" clause within a policy of liability insurance is satisfied when the insurer is provided notice from an injured person or his or her counsel. *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill. 2d 318, 323-24, 121 N.E.2d 509 (1954). Therefore, an insurer may be liable under an insurance contract even if the insured never tenders a defense of the lawsuit. *Federated Mutual Insurance Co.*, 282 Ill. App. 3d at 725-26. Moreover, actual notice can arise from a letter or phone call to the insurer from an injured party or an attorney asserting a claim under the insurance policy. *Rice*, 294 Ill. App. 3d at 808.

In *Rice*, the appellate court reversed the summary judgment entered for the insurer because the insurer's affidavit did not negate the possibility that the insurer had actual notice sufficient for it to locate and defend a lawsuit. The court noted that the insurer may have discovered the lawsuit in any number of ways and such discovery may have allowed it to locate and defend the lawsuit. *Rice*, 294 Ill. App. 3d at 808-09. The court remanded the case to allow the insurer to provide additional evidence on this issue due to the insufficiency of the insurer's affidavit attached to its motion for summary judgment, which did not preclude the possibility that the insurer had actual notice of the lawsuit. *Rice*, 294 Ill. App. 3d at 808.

Our supreme court has concluded that the actual notice standard does not unduly burden insurers because of the strong public policy in favor of coverage. *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 329, 701 N.E.2d 499 (1998). The court stated:

"The insurer, having received consideration for inclusion of the insured on its policy, should not be allowed to evade its responsibilities under the policy as a result of the insured's ignorance, particularly where the insurer has actual notice of a claim against its insured." *Cincinnati Cos.*, 183 Ill. 2d at 329.

Thus, the court concluded that an insurer's actual notice of a lawsuit triggers its duty to defend. *Cincinnati Cos.*, 183 Ill. 2d at 329. The court further defined actual notice as "notice sufficient to permit the insurer to locate and defend the lawsuit." *Cincinnati Cos.*, 183 Ill. 2d at 329.

■ The insurer may receive actual notice from a variety of sources to enable it to locate and defend a lawsuit. *Rice*, 294 Ill. App. 3d at 808-09. The forwarding of notice of a lawsuit to an entity intimately connected with the insurer constitutes actual notice of the lawsuit. *Keepers v. Powell*, 131 Ill. App. 2d 423, 427, 268 N.E.2d 488 (1971). Moreover, a course of dealing between an insurer and its broker estops the insurer from denying an agency relationship between the two entities and estops the insurer from denying coverage based on notice sent to the broker. *Empire Fire & Marine Insurance Co. v. Faith Truck Lines, Inc.*, 178 Ill. App. 3d 356, 359-60, 533 N.E.2d 441 (1988). Furthermore, the forwarding of notice of a lawsuit to attorneys that an insurer retains satisfies the actual notice standard. *Cincinnati Insurance Co. v. Baur's Opera House, Inc.*, 296 Ill. App. 3d 1011, 1016, 694 N.E.2d 593 (1998).

■ In this case, Barnett was attacked and injured at Savage's store on December 1, 1991. Plaintiff does not deny that it received immediate notice of Barnett's injury from Guild eight days after the occurrence, on December 9, 1991. After receiving this notice, plaintiff sent a letter to Guild on December 13, 1991, which stated that it "acknowledged receipt of the loss" and assigned a file number to the claim. Plaintiff further acknowledges that it has a 14-year relationship with Guild and routinely receives notices of claims and suit papers from Guild.

In addition, plaintiff hired Wallrub to conduct an investigation of the claim. Within a three-month period following Barnett's injury, Wallrub interviewed witnesses, such as Savage and Barnett, took photographs, and otherwise conducted an investigation of the claim. Wallrub's investigators further told Barnett when they interviewed her and Savage that they were working on behalf of Savage's insurance company. In fact, Wallrub has handled thousands of claims for plaintiff.

On November 9, 1993, within two weeks of filing the lawsuit against Savage, Barnett's attorney wrote to both Guild and Wallrub, enclosed copies of the recently filed complaint, requested each to forward the complaint to plaintiff and requested each to call to discuss a settlement. Thus, the plaintiff's broker and investigators received notice of the lawsuit and a copy of the complaint within two weeks of its being filed. This information amply informed plaintiff, via its insur-

ance broker and its investigators, that a lawsuit had been filed and that the lawsuit's allegations fell within the coverage provisions of the insurance policy. Both Guild, plaintiff's broker, and Wallrub, plaintiff's investigators, were intimately connected with the insurer. In the context of the facts of this case, forwarding notice of the lawsuit to Guild and Wallrub constitutes actual notice to the insurer. *Keepers*, 131 Ill. App. 2d at 427.

■ We further reject plaintiff's argument that because the individual notifying the insurer was an attorney, he should not have merely forwarded notice to the insurer's broker and investigators but instead forwarded notice directly to the insurer. Our supreme court has held that the only inquiry in determining an insurer's duty to defend is whether the insurer received actual notice of the lawsuit. *Cincinnati Cos.*, 183 Ill. 2d at 329. The issue of the sophistication of the insured is not relevant to this inquiry. *Cincinnati Cos.*, 183 Ill. 2d at 329. Therefore, the actual notice standard only requires the court to determine whether the notice the insurer received sufficiently enabled it to locate and defend the lawsuit. *Olivieri v. Coronet Insurance Co.*, 173 Ill. App. 3d 867, 872, 528 N.E.2d 986 (1987).

Our supreme court has further noted that, in order to have actual notice sufficient to locate and defend a suit, an insurer must know both that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies. *Cincinnati Cos.*, 183 Ill. 2d at 330. Mindful of that definition, we find based on the totality of the circumstances that plaintiff received notice sufficient to locate and defend the lawsuit. The circuit court's finding that plaintiff received actual notice of the lawsuit was therefore not against the manifest weight of the evidence.

■ Plaintiff alternatively argues that, despite receiving actual notice, its duty to defend was never triggered because Barnett's attorney did not forward plaintiff a copy of the summons served on Savage. We disagree. Again, the issue is whether plaintiff received actual notice of the lawsuit. In *Olivieri v. Coronet Insurance Co.*, the court addressed the failure of the insured or injured party to send notice of service of summons to the insurer. *Olivieri*, 173 Ill. App. 3d at 869. In that case, the injured party sent the insurer a copy of the complaint at the time the lawsuit was filed but did not send service of summons to the insurer when the insured was served eight months later. *Olivieri*, 173 Ill. App. 3d at 869. The court noted that the insurer received notice of the occurrence and was in contact with the injured party prior to the filing of the lawsuit. *Olivieri*, 173 Ill. App. 3d at 871. The court held that an insured's failure to forward to his insurance company process received by him does not preclude recovery on the policy where the

insurer has actual notice of the lawsuit. *Olivieri*, 173 Ill. App. 3d at 872. Moreover, the court concluded that the injured party's forwarding of the complaint prior to obtaining service of summons constituted compliance with the notice-of-suit provision. *Olivieri*, 173 Ill. App. 3d at 872.

Plaintiff asks this court to overrule *Olivieri* and adopt the approach taken by other jurisdictions. In essence, plaintiff requests that this court add an additional element to the actual notice standard and require that the insurer not only receive notice sufficient to locate and defend a lawsuit but also receive notice of service of summons on the insured in order to trigger the duty to defend.

In *Cincinnati Cos.*, our supreme court addressed a similar attempt to add an additional requirement to the actual notice standard. In that case, the insurer argued that its duty to defend was not triggered until: (1) it received notice sufficient to locate and defend the lawsuit; *and* (2) the insured tendered its defense to the insurer. *Cincinnati Cos.*, 183 Ill. 2d at 323. Citing the interest of the state in having an insured adequately represented in litigation, the supreme court rejected the insurer's attempt to add this additional requirement. The supreme court adhered to the actual notice standard, which it defined as "notice sufficient to permit the insurer to locate and defend the lawsuit." *Cincinnati Cos.*, 183 Ill. 2d at 329. As indicated by the supreme court in *Cincinnati Cos.*, this rule, which requires only "actual notice to trigger the duty to defend," will protect the state's interest in having an insured adequately represented. *Cincinnati Cos.*, 183 Ill. 2d at 329. In light of *Cincinnati Cos.*, we reject plaintiff's attempt to impose an additional element for compliance with the actual notice standard by requiring that an insurer also receive notice of service of summons on the insured in order to trigger the duty to defend.

Moreover, courts in Illinois continue to rely on *Olivieri*. For instance, citing *Olivieri*, the court in *Rice v. AAA Aerostar, Inc.*, stated: "In some cases notice of suit even after a default is entered might enable the insurer to satisfactorily defend the suit, if the insurer would be able to persuade the court to vacate the default." *Rice*, 294 Ill. App. 3d at 808. The *Rice* court further stated that, despite language in an insurance policy, the insurer is not necessarily required to receive all copies of summonses, demands, notices or legal papers associated with a lawsuit to be liable under the insurance policy but may still be liable if it had "actual notice" of the lawsuit. *Rice*, 294 Ill. App. 3d at 807.

Plaintiff also cites *American Country Insurance Co. v. Cash*, 171 Ill. App. 3d 9, 524 N.E.2d 1016 (1988), to support the contention that Barnett's failure to forward service of summons relieves plaintiff's duty to defend. We do not find *Cash* persuasive. In *Cash*, the court

concluded that if an insurer receives notice after default judgment has been entered against its insured, the insurer should not have a duty to defend because it cannot defend the lawsuit on its merits. *Cash*, 171 Ill. App. 3d at 11. In the instant case, however, *plaintiff* was able to vacate the default judgment entered against Savage, which is one factor that distinguishes this case from *Cash*.

While we recognize that the better practice is to forward the lawsuit and notice of service of summons to the insurer, a failure to do so will not automatically defeat the actual notice requirement. Compliance with the actual notice standard is a question of fact to be determined by the totality of the circumstances. We follow the approach recognized by *Olivieri*, which both the appellate court in *Rice* and our supreme court in *Cincinnati Cos.* have recently determined as proper. Consequently, if the insurer has been supplied with sufficient information to locate and defend the suit, then the actual notice requirement has been satisfied. *Olivieri*, 173 Ill. App. 3d at 872; *Cincinnati Cos.*, 183 Ill. 2d at 329; *Rice*, 294 Ill. App. 3d at 807.

The facts in this case support the conclusion that plaintiff was provided with sufficient information to locate and defend the suit, satisfying the actual notice standard and triggering the plaintiff's duty to defend. Plaintiff received notice of Barnett's claim within eight days of the occurrence. Plaintiff was in contact with its insured immediately after the accident. Plaintiff sent claim forms to the insured, hired investigators and began to prepare to defend the claim eight days after Barnett was attacked. Barnett and plaintiff had been in communication with each other since immediately after the occurrence. Barnett's attorney also contacted plaintiff. Three weeks after the attack, Barnett specifically talked with plaintiff on the telephone, and plaintiff informed Barnett about its investigation of the claim. In addition, both Barnett and Barnett's attorney spoke with plaintiff's investigator in charge of investigating the claim. Plaintiff's investigators and plaintiff's insurance broker received a copy of the filed complaint from Barnett's lawyer within two weeks of the filing date. Therefore, plaintiff was provided with sufficient information to locate and defend the lawsuit and the actual notice requirement has been satisfied even though counsel for Barnett failed to forward service of summons to the insurer.

■ Plaintiff lastly argues that it may have been prejudiced in not receiving notice of Barnett's lawsuit. "When notice of the lawsuit is the issue, the rule is that the insurer is required to show that it was prejudiced by the insured's omission or delay in order to escape liability on its policy." *Rice*, 294 Ill. App. 3d at 807-08, citing Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prej-*

*udice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident of Claim, or in Forwarding Suit Papers*, 32 A.L.R.4th 141, 145 (1984). Plaintiff was not only able to conduct a timely investigation of the occurrence but it was also successful in vacating the default judgment. Plaintiff produced no evidence at trial that it was actually prejudiced but only now speculates that a contribution or indemnity claim may have been time-barred. Therefore, we reject plaintiff's prejudice argument.

Based on the totality of the circumstances in this case, we conclude that the circuit court's decision that plaintiff received actual notice of Barnett's lawsuit was not against the manifest weight of the evidence.

### III. EMPLOYEE-INJURY EXCLUSION

Plaintiff next argues that it owes no duty to defend and to indemnify because Barnett was an employee of Savage at the time she was injured and thus excluded from coverage under the insurance policy. The exclusion provision at issue states:

"Exclusions

This Insurance does not apply:

\* \* \*

(d) to bodily injury to any employee of the insured arising out of or in the course of his employment by the insured."

Plaintiff contends that because Barnett was in charge of Savage's store when she was attacked and injured, she was either an employee or agent of Savage. In order for an insurance policy's exclusion to apply in favor of the insurer, "the applicability of the clause must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *Insurance Co. v. Stringfield*, 292 Ill. App. 3d 471, 473, 685 N.E.2d 980 (1997). If an insurance contract's provision is clear and unambiguous, the provision is applied as written. *General Insurance Co. of America v. Robert B. McManus, Inc.*, 272 Ill. App. 3d 510, 513-14, 650 N.E.2d 1080 (1995).

To determine whether an individual is an employee as provided in an insurance contract exclusion, the court examines several factors, such as the alleged employer's control over the individual, the employer's ability to discharge the individual, and whether the employer furnished materials, tools, or equipment. *Universal Underwriters Insurance Co. v. State Farm Automobile Insurance Co.*, 128 Ill. App. 3d 696, 701, 470 N.E.2d 1130 (1984). Additionally, the court considers the regularity of work and if the employer compensated the individual for work performed. *Universal Underwriters Insurance Co.*, 128 Ill. App. 3d at 701.

In *Universal Underwriters Insurance Co.*, the employer sent his daughter to pick up motorcycles in Chicago for his business. The

daughter used the company vehicle to drive to Chicago and, during the trip, sustained personal injuries in a single-car accident. Finding that the daughter was not excluded under the employee-injury exclusion of her father's insurance policy, the court noted that the daughter did not receive compensation for the trip, was not on the business' payroll and therefore was not an employee. *Universal Underwriters Insurance Co.*, 128 Ill. App. 3d at 701-02.

■ In this case, Barnett was a close personal friend of Savage for 25 years. When Barnett watched Savage's store, Savage was neither present nor did he maintain control over Barnett. Savage did not supply Barnett with any material, equipment, or supplies. Moreover, Barnett watched the store on approximately six occasions in total and did not regularly or continuously perform any work-related activities for Savage. Savage never hired Barnett as an employee or offered her any money for helping at the store. Barnett never requested to be paid and was not on Savage's payroll. Therefore, Barnett watched Savage's store as a personal favor and not because she was an employee.

Plaintiff's reliance on *Village of Creve Coeur v. Industrial Comm'n*, 32 Ill. 2d 430, 206 N.E.2d 706 (1965), is distinguishable. In that case, the court found that a volunteer fireman was an employee of a municipality for purposes of workmen's compensation benefits. The court noted that the village compensated the fireman for his work and furnished him equipment. In addition, the fireman was under the direct control of the fire chief, was subject to dismissal, and was listed on the village payroll. *Village of Creve Coeur*, 32 Ill. 2d at 433-34. Accordingly, the relationship between the village and the volunteer fireman was in no way similar to the relationship between Savage and Barnett.

Plaintiff also cites several workmen's compensation cases for support of its argument that Barnett was an employee or agent of Savage and not an independent contractor. In *General Accident Fire & Life Assurance Corp. v. Professional Golfers Ass'n of America*, 40 Ill. App. 3d 592, 595-96, 352 N.E.2d 441 (1976), the court noted that workmen's compensation cases provide little assistance in interpreting an insurance contract exclusion clause because the exclusion must be strictly construed against the insurer. Moreover, the issue of whether an individual is excluded under an employee-injury exclusion in an insurance contract is a question of fact and the fact finder's decision will not be disturbed unless it is against the manifest weight of the evidence. *General Accident Fire & Life Assurance Corp.*, 40 Ill. App. 3d at 595.

In the present case, the exclusion clause is limited to an injury to an "employee." Furthermore, the evidence supports the conclusion that Barnett was Savage's close friend, not an employee, and only as-

sisted Savage at the liquor store because of this friendship. Therefore, the circuit court's determination that the employee-injury exclusion did not apply to Barnett was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

O'BRIEN, P.J., and GALLAGHER, J., concur.