**L'ATRIUM ON THE CREEK I, L.P., et al., Plaintiffs,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, et al., Defendants.**

No. 4:03–CV–1221–A.

United States District Court, N.D. Texas, Fort Worth Division.

April 28, 2004.

Robert R. Bodoin, Bodoin Burnside Burge & Agnew, Fort Worth, TX, for Plaintiffs.

Harrison Yoss, Kimberly S. Kendrick, Thompson Coe Cousins & Irons, Dallas, TX, for Defendants.

*MEMORANDUM OPINION*
*AND ORDER*

McBRYDE, District Judge.

Came on for consideration the motion of plaintiffs, L'Atrium on the Creek I, L.P., L'Atrium on the Creek, Inc., and Sierra Management, Inc., for partial summary judgment, and the cross-motion of defendants, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and AIU Insurance Company ("AIU"), for summary judgment. The court, having considered the motions, the responses, the replies, the record, the summary judgment evidence, and applicable authorities, finds that plaintiffs' motion should be denied and that defendants' cross-motion should be granted.

## I.

### Plaintiffs' Claims

On September 3, 2003, plaintiffs filed their original petition in the 236th Judicial District Court of Tarrant County, Texas. The action was brought before this court by notice of removal filed October 14, 2003. Plaintiffs allege: Between November 5, 1997, and November 5, 1998, plaintiffs were insured under policy no. BE357–17–59 ("the policy") issued by defendants. Plaintiffs were sued by LaToya A. Ball ("Ball") in cause no. 352–183174–00 in Tarrant County, Texas ("the Ball lawsuit"), who asserted that she suffered personal injuries as a result of the acts or omissions of plaintiffs during the term of the policy. The acts or omissions of plaintiffs giving rise to the Ball lawsuit were an "occurrence," as that term is defined in the policy. Further, when initially notified of the Ball lawsuit, defendants failed and refused to indemnify and defend plaintiffs in that suit. Although defendants ultimately indemnified and defended plaintiffs, they refused to pay reasonable and necessary attorneys' fees, costs, and expenses incurred by plaintiffs from the date of the inception of the Ball lawsuit through approximately September 2002.

Plaintiffs assert claims under Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 1997), under Tex. Ins.Code Ann. art. 21.21 (Vernon Supp.2003), and for violation of the Texas Deceptive Trade Practices— Consumer Protection Act, Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 2002) ("DTPA").

## II.

### Grounds of the Motions

Plaintiffs seek judgment as to their breach of contract claim under § 38.001 of the Texas Civil Practice and Remedies Code, arguing that because defendants ultimately agreed to indemnify and defend them, and did so, defendants must pay all costs and expenses, including attorneys' fees, incurred in defending the Ball lawsuit, as well as their attorneys' fees incurred in this lawsuit.

Defendants seek judgment that plaintiffs take nothing on all of their claims against defendants. They urge: First, defendants did not breach the contract, that is, the policy. Second, defendants are not liable for any violation of art. 21.21 of the Texas Insurance Code because (a) they did not breach the policy; (b) plaintiffs' conclusory claims of misrepresentation stem only from the breach of contract allegations; and (c) plaintiffs have not sustained any actual damages beyond policy benefits. Third, because plaintiffs' claim for violations of the DTPA is premised solely on the alleged violation of the Insurance Code, their DTPA claim fails as a matter of law. And, fourth, AIU is not a proper party defendant, because National Union issued the policy to plaintiffs.

## III.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s][its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994). An issue is material only if its resolution could affect the outcome of the action.

*Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597, 106 S.Ct. 1348. *See also Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

## IV.

### Undisputed Evidence

The following is an overview of evidence pertinent to the motions for summary judgment that is undisputed in the summary judgment record:

National Union issued the policy effective from November 5, 1997, to November 5, 1998, to plaintiffs. On or about June 1, 2000, Ball filed the Ball lawsuit naming plaintiffs herein as defendants. Ball alleged that on June 8, 1998, she was sexually assaulted at an apartment complex in Arlington, Texas, by plaintiffs' uniformed employee. Plaintiffs hired their own counsel, Robert Bodoin ("Bodoin"),[1] who filed an answer on their behalf. They did not tender their defense in the Ball lawsuit to National Union by sending the pleading they had been served with or by otherwise requesting a defense.

---

1. Apparently Bodoin has been the attorney for plaintiffs since prior to the institution of the Ball lawsuit. The suit papers were served on him as registered agent for the plaintiffs, and he defended them in the Ball lawsuit. App. to Pls.' Mot. at 2, ¶ 3.

By letter dated April 13, 2001, to Bodoin, Ball, through her attorney, made an unconditional offer for full and complete settlement of the Ball lawsuit for a payment of $750,000.00. The letter stated that it was an offer of settlement pursuant to *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex. Comm.App.1929, holding approved).[2] Plaintiffs still did not notify defendants of the Ball lawsuit, although it had been pending almost one year.

By letter dated July 26, 2001, Ball's attorneys informed National Union that they had been retained to represent Ball. The letter also stated that the case was currently in litigation and that it was set for trial on September 10, 2001. A copy of the original petition in the Ball lawsuit was enclosed. By letter dated August 1, 2001, counsel for Ball informed National Union that the Ball lawsuit had been set for mediation on August 14, 2001. The record does not indicate that plaintiffs or Bodoin received copies, or had knowledge, of the July 26 or August 1 letters.

By letter dated September 4, 2001, AIG Technical Services, Inc. ("AIGTS") responded to Ball's correspondence. AIGTS told Ball's counsel that plaintiffs had never provided notice of the lawsuit or requested

a defense, noting that the policy specifically required the insureds to provide prompt notice and to cooperate in any defense.[3] The letter mistakenly referred to AIU as the insurance carrier. The letter further noted that under Texas law, known as the "related to and interdependent on" doctrine, the policy would not provide coverage for intentional and criminal acts of plaintiffs' employee. The insurer declined to participate in any settlement negotiations, but it did not decline to defend the Ball lawsuit. AIGTS sent a courtesy copy of the September 4, 2001, letter to Bodoin.

By letter of September 19, 2002, plaintiffs, through Bodoin, for the very first time asked the insurer to provide them a defense in the Ball lawsuit.[4] Mr. Bodoin explained during a telephone conference/hearing the court conducted April 27, 2004, that he and his clients did not call the insurer's attention to the Ball lawsuit before September 2002 because he was of the belief until the August 29, 2002, decision of the Texas Supreme Court in *King v. Dallas Fire Insurance Co.*, 85 S.W.3d 185 (Tex.2002), that the law was that the insurer did not have defense or indemnification obligations in reference to the lawsuit. In other words, Bodoin's remarks

---

2. The reference in the letter to the *Stowers* case is peculiar. *Stowers* established the doctrine in Texas that, depending on the language of the insurance policy, an insurance company can have an obligation to exercise ordinary care to negotiate a settlement on behalf of its insured under a liability insurance policy. 15 S.W.2d at 548. There is no indication in the record that an insurance company had any involvement in the Ball lawsuit at that time.

3. The policy provides, in pertinent part:
F. Duties in the Event of an Occurrence, Claim or Suit

   2. If a claim is made or suit is brought against any Insured that is reasonably likely

to involve this policy you must notify us in writing as soon as practicable.
  3. You and any other involved Insured must:
    a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

    c. cooperate with us in the investigation, settlement or defense of the claim or suit....
Defs.' App. at 18.

4. The September 19 letter was addressed to AIGTS and mistakenly referred to AIU as the insurance carrier.

disclose that plaintiffs intentionally failed to comply with the insurance policy's notice and cooperation conditions precedent for more than two years after the Ball lawsuit was filed and intentionally incurred litigation expenses for that period of time in violation of the voluntary payments clause of the policy.

By letter dated October 17, 2002, AIGTS responded that the insurer would defend and indemnify plaintiffs subject to a reservation of rights set forth in the letter. Further, the insurer advised that it would reimburse plaintiffs for reasonable defense costs incurred from September 19, 2002, the date plaintiffs first asked the insurer to defend them in the Ball lawsuit.

By letter dated October 30, 2002, plaintiffs, through Bodoin, insisted that the insurer must pay all of their attorneys' fees, because it could not show that it was prejudiced by the lack of notice. By response dated November 12, 2002, AIGTS noted that the insurer was not required to show any prejudice. The insurer also called Bodoin's attention to plaintiffs' violation of the voluntary payments clause of the policy. That clause provides:

> No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Defs.' App. at 18.

Once asked by plaintiffs to defend them in the Ball lawsuit, the insurer fully complied with its policy obligations. National Union timely paid plaintiffs' post-tender defense costs and settled the Ball lawsuit on behalf of plaintiffs. Plaintiffs filed this lawsuit, because defendants would not pay for attorney's fees and expenses incurred prior to September 19, 2002.

## V.

### Law Applied to the Facts

All of plaintiffs' claims turn on whether defendants breached the policy by refusing to reimburse plaintiffs for defense costs incurred prior to September 19, 2002. "[U]nder Texas law, an insurer's duty to defend an insured is only triggered by the actual service of process upon its insured and its relay to the insurer." *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 768 (5th Cir.1999) (citing *Members Ins. Co. v. Branscum*, 803 S.W.2d 462, 466–67 (Tex.App.—Dallas 1991, no writ)); *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 399–400 (5th Cir.1995), *disapproved in part on other grounds, Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 241 F.3d 396, 398 (5th Cir.2001); *Rodriguez v. Tex. Farmers Ins. Co.*, 903 S.W.2d 499, 507 (Tex.App.—Amarillo 1995, writ denied). One of the purposes of a notice of suit provision is to notify the insurer that the insured has been served with process and that the insurer is expected to defend. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). "Compliance with the notice of suit provision is a 'condition precedent to the insurer's liability on the policy." ' *Id.* at 173–74. It is the insured's duty to notify the insurer of the suit against it when it receives service of process; it is not the insurer's duty to determine when or if the insured was served. *Id.* at 174.

Here, plaintiffs argue that the notice could come from any source, and that defendants received notice of the Ball litigation through the demand letters sent by Ball's attorneys. Pertinent authorities do not support such a broad proposition. Rather, it is the "action by the insured" in sending the suit papers to the insurer that "triggers the insurer's obligation to tender a defense and answer the suit." *Members Ins. Co.*, 803 S.W.2d at 467. Plaintiffs may

have had any number of reasons for failing to notify defendants that they had been served with process and were looking to defendants to defend and indemnify them. Defendants were entitled to rely on the fact that plaintiffs were represented by counsel and surely would have made a demand for defense and indemnification if they wanted defendants to be involved. After all, the insurer sent plaintiffs' counsel a copy of the September 4, 2001, letter.

Plaintiffs further argue that it would have been futile for them to have demanded a defense from defendants, since defendants had declined to negotiate with Ball or participate in the mediation. Coverage had not been denied, however, and no demand for a defense or indemnity had ever been made by plaintiffs. Moreover, when the demand was ultimately made, a defense was provided and the insurer paid to settle the claim.

Plaintiffs argue that the voluntary payments clause was waived by defendants' negative response to the demands of Ball's counsel. But, as previously noted, defendants never denied a defense to plaintiffs. Accordingly, the cases they cite are not on point. As a matter of law, defendants do not owe plaintiffs a duty to reimburse them for expenses incurred in violation of the voluntary payments clause. *Lafarge Corp.*, 61 F.3d at 399–400; *E & L Chipping Co. v. Hanover Ins. Co.*, 962 S.W.2d 272, 278 (Tex.App.—Beaumont 1998, no pet.).

An insurer is not liable for violation of Article 21.21 of the Texas Insurance Code if it has not breached the insurance policy. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex.1995).[5] Nor can

it be liable for DTPA claims based on nonexistent violations of Article 21.21. Accordingly, the remainder of plaintiffs' claims fail.

Finally, the court notes that plaintiffs have not come forward with any genuine fact issue as to the alleged liability of AIU. It cannot be liable for breach of a contract to which it was not a party. *Cannon v. ICO Tubular Servs., Inc.*, 905 S.W.2d 380, 393 (Tex.App.—Houston [1st Dist.] 1995, no writ); *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 721 (Tex.App.—Dallas 1989, writ denied).

## VI.

### Order

For the reasons discussed herein,

The court ORDERS that plaintiffs' motion for partial summary judgment be, and is hereby, denied; defendants' motion for summary judgment be, and is hereby, granted; plaintiffs take nothing on their claims against defendants; and, such claims be, and are hereby, dismissed with prejudice.

---

5. In any event, an alleged misrepresentation that stems solely from the insurer's breach of a policy will not also support a claim for violation of the Texas Insurance Code. *Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 92 (Tex.App.—Houston [1st Dist.] 2003, pet. denied).