2008-NMSC-018

182 P.3d 113

Victoria GARCIA, Individually and as Personal Representative of The Estate of Patrick Garcia, Deceased, and as next Friend of Patrick G. and Diego G., minors, Plaintiff–Respondent,

v.

UNDERWRITERS AT LLOYD'S, LONDON, and Burns & Wilcox, Ltd., Defendants–Petitioners.

No. 30,245.

Supreme Court of New Mexico.

March 13, 2008.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Kenneth L. Harrigan, Zachary L. McCormick, Albuquerque, NM, for Petitioners.

Robert D. Gorman, P.A., Robert D. Gorman, Robert J. Maguire, P.C., Robert Joseph Maguire, Cheryl Thompson, Albuquerque, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} This insurance case raises issues about when a liability insurer's duty to defend is triggered. Over twenty years ago, in *State Farm Fire & Casualty Co. v. Price,* our Court of Appeals stated that "before the duty to defend arises there must be a demand." 101 N.M. 438, 443, 684 P.2d 524, 529 (Ct.App. 1984), *overruled on other grounds by Ellingwood v. N.N. Investors Life Ins. Co.,* 111 N.M. 301, 307, 805 P.2d 70, 76 (1991). The Court of Appeals in this case announced a different rule that "actual notice presumptively triggers a duty to defend," unless "the insured knowingly declined a defense." *Garcia v. Underwriters at Lloyd's London,* 2007–NMCA–042, ¶ 25, 141 N.M. 421, 156 P.3d 712. Defendant Underwriters at Lloyd's, London (Lloyd's) claims that this rule is in conflict with New Mexico law as articulated in *Price.* We now expressly adopt the Court of Appeals' analysis, and hold that actual notice is sufficient to trigger the duty to defend unless the insured affirmatively declines a defense.

## BACKGROUND

{2} The facts are set forth in their entirety in the Court of Appeals' opinion and we relate only those facts pertinent to the issue before us on certiorari.

{3} This case arises out of the death of Patrick Garcia, the husband of Plaintiff Victoria Garcia. Mr. Garcia was killed on April 23, 1999, when his vehicle was struck by a

vehicle driven by Sally Padilla as she was leaving the Red Carpet Bar in Belen, allegedly in an intoxicated condition. On November 14, 1999, the owner of the Red Carpet Bar, Anthony Perfetti, died in a different car accident. Later that same month, Ballerie Schuessler, as Personal Representative of the Perfetti Estate, filed a formal probate proceeding in the Thirteenth Judicial District Court. In that same probate proceeding, Plaintiff made a timely wrongful death claim against the Perfetti Estate pursuant to NMSA 1978, Section 45-3-804 (1983). Plaintiff alleged that Mr. Garcia's death was caused in part by the negligence of the Red Carpet Bar in serving Ms. Padilla alcohol until she left in an intoxicated state, and failing to maintain its parking lot in a manner which would have prevented Ms. Padilla from improperly and illegally gaining access to the state highway, thereby causing Mr. Garcia's death.

{4} The Personal Representative of the Perfetti Estate "failed to respond or otherwise take any action with regard to Plaintiff's claim" and "failed to file an inventory or otherwise account for the assets of the [Perfetti Estate] or to take any significant action to administer the Estate." *Garcia*, 2007-NMCA-042, ¶ 4. Thus, on April 18, 2001, the district court removed the Personal Representative and appointed a Special Administrator with limited powers to administer the Perfetti Estate pending the appointment of a successor Personal Representative. In May 2001, the Special Administrator notified Plaintiff's counsel of a liability insurance policy for the Red Carpet Bar and directed Plaintiff to obtain any further information about insurance from Insurance Exchange in Albuquerque, the insurance agent for the Red Carpet Bar.

{5} Plaintiff's counsel then wrote a letter to Insurance Exchange requesting a copy of the policy for the Red Carpet Bar. The letter summarized the April 23, 1999, accident and included a copy of Plaintiff's claim filed in the probate proceedings against the Perfetti Estate. Plaintiff's counsel requested that Insurance Exchange treat the letter as a claim under the policy and notify the insurer. Insurance Exchange forwarded the claim to Burns & Wilcox, the agent for Lloyd's, which in turn advised the attorneys for Lloyd's of the claim. Thus, Lloyd's received actual notice of the claim on June 14, 2001.

{6} On June 29, 2001, New York counsel for Lloyd's wrote a letter to the attorney for the Special Administrator advising that Lloyd's accepted notice of the claim and was proceeding under a reservation of rights because notice appeared to be late under the terms of the policy, which required that the insured notify Lloyd's in writing of any claim made under the policy "as soon as practicable." Apparently, Lloyd's took the position that, because the accident resulting in the claim had occurred more than two years prior to Lloyd's receiving notice, it was not notified "as soon as practicable." No other reservation of rights was asserted. New York counsel informed the Perfetti Estate that the claim was under investigation and recommended that the Special Administrator disallow the claim.

{7} In a telephone conversation on September 21, 2001, the Special Administrator's attorney informed Lloyd's that the Special Administrator did not have the statutory authority that a Personal Representative does to deny claims, and that only the court had the authority to determine the validity of the claim in the formal probate proceeding.[1] In a follow-up letter dated September 28, 2001, the Special Administrator's attorney summarized the earlier phone conversation; urged Lloyd's to intervene in the probate proceedings as an interested party, and recommended that Lloyd's pursue a motion for the court to deny the wrongful death claim.

{8} On September 25, 2001 New York counsel wrote to Lloyd's to report on the status of the matter. The letter stated that

1. Though not material to this appeal, this conclusion appears to be erroneous, as the order appointing the Special Administrator specifically authorized the Special Administrator to "defend against any claim that may be asserted against the [Perfetti Estate] or its assets." Furthermore, under the *Uniform Probate Code*, a special administrator has the power of a personal representative, NMSA 1978, § 45-3-617 (1975), and a personal representative has the power to deny claims, NMSA 1978, § 45-3-806(A) (1993).

no action needed to be taken by Lloyd's in the probate proceedings because, under New Mexico probate statutes and case law, the probate court did not have jurisdiction to entertain tort claims and any determination by the probate court had "no bearing on the merits of [Plaintiff's] claim." Thus, New York counsel concluded that Plaintiff had to file a lawsuit against the Red Carpet Bar or the Perfetti Estate before Underwriter's duty to defend would be triggered. As discussed in the Court of Appeals opinion, these conclusions proved to be incorrect. *Garcia*, 2007–NMCA–042, ¶¶ 13–23.

{9} "The Perfetti Estate was thereafter administered under the direction of the district court for the assets to be collected and claims paid." *Id.* ¶ 12. On September 16, 2002, the district court entered an order in the probate case allowing Plaintiff's claim in the amount of $3,000,000. The court also filed a "Stipulated Order Approving Assignment of Insurance Policies and Claims," in which the Special Administrator assigned to Plaintiff the rights of the Perfetti Estate under the insurance policy so that Plaintiff could pursue the claim directed against Lloyd's.

{10} Under the assignment of rights, Plaintiff filed a lawsuit against Lloyd's for breach of contract, bad faith, and violation of the Insurance Code and Unfair Practices Act. The district court granted summary judgment in favor of Lloyd's based on the arguments advanced by Lloyd's that (1) Plaintiff's claim for damages against the Perfetti Estate was not cognizable in the probate proceeding, but rather, exclusive jurisdiction over such a claim "resided with a district court hearing a properly filed tort suit," and (2) the Perfetti Estate waived any duty to defend because "the insured never made any demand for defense or tendered the defense of the wrongful death notice of claim to [Lloyd's], either personally before he died or through his Estate."

{11} Plaintiff appealed and the Court of Appeals reversed, holding that: (1) a wrongful death claim may properly be filed against the estate of a decedent in formal probate proceedings before the district court sitting in probate; (2) the liquor liability insurance

policy issued by Lloyd's provided coverage for such a claim; (3) there are material issues of fact regarding whether the Perfetti Estate made a sufficient demand for a defense under the policy; and (4) policy defenses are not available to the insurer if the finder of fact determines that the Perfetti Estate made a demand for a defense under the policy. *Garcia*, 2007–NMCA–042, ¶ 1. Judge Wechsler wrote a special concurrence agreeing that there were issues of material fact precluding summary judgment, but stating his belief that the majority unnecessarily deviated from *Price* in creating a presumption that actual notice triggers the duty to defend. Instead, Judge Wechsler wrote that "[t]he question should be 'whether there was a sufficient demand to defend.'" *Id.* ¶¶ 41, 44. We granted certiorari to decide a single issue: whether a liability insurer's duty to defend is presumptively triggered by actual notice of a claim under the policy.

## STANDARD OF REVIEW

{12} Our review on a grant of summary judgment is de novo. *See Juneau v. Intel Corp.*, 2005–NMSC–002, ¶ 8, 139 N.M. 12, 127 P.3d 548. Summary judgment is only appropriate "where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. All reasonable inferences from the record are construed in favor of the non-moving party. *Celaya v. Hall*, 2004–NMSC–005, ¶ 7, 135 N.M. 115, 85 P.3d 239.

## DISCUSSION

### Actual Notice Presumptively Triggers the Insurer's Duty to Defend

{13} The Court of Appeals correctly noted a split among jurisdictions over the issue of when the duty to defend is triggered. *Garcia*, 2007–NMCA–042, ¶ 25. Some courts require a specific event, such as a written demand or transmission of the complaint from the insured, while others hold that the duty to defend is triggered when the insurer has actual notice of a claim against the insured. *See id.* (citing cases). The statement in *Price* that the duty to defend does not arise unless there is a demand seems to suggest

that New Mexico falls in the former category. 101 N.M. at 443, 684 P.2d at 529. However, upon closer examination of *Price* and other New Mexico case law, it becomes clear that, as observed by the majority of the Court of Appeals, "New Mexico's appellate courts have never attributed any particular formality to the concept of a 'demand.'" *Garcia*, 2007–NMCA–042, ¶ 27.

{14} In *Price*, the Court of Appeals held that the trial court had improperly directed a verdict for the insurer, because reasonable minds could differ on whether two letters written by the insured could support a finding that a defense had been demanded. 101 N.M. at 444, 684 P.2d at 530. The court observed that the evidence could

> support a conclusion that [the insurer] *knew of the lawsuit and knew of the possibility of settlement, yet consciously disregarded what was happening.* It is true that no suit papers were forwarded to [the insurer] and that notice of the impending settlement could have been more clearly given. However, under the circumstances reasonable minds could differ about whether there was a sufficient demand to defend on [the insurer], about [the insurer's] good faith, and about the insured's conduct. These are properly [sic] issues for the jury.

*Id.* (emphasis added). Thus, although *Price* states that "before the duty to defend arises there must be a demand," *id.* at 443, 684 P.2d at 529, it does not require the insured to take any particular action with any degree of formality, or to clearly and unequivocally make such a demand. Indeed, the language in *Price* seems to indicate that actual notice of a claim combined with the insurer's deliberate disregard of that claim could be sufficient to trigger the duty to defend, without any affirmative demand from the insured. Therefore, *Price* does not stand for the proposition, as argued by Lloyd's, that the insurer will only have a duty to defend upon receiving a formal demand from the insured.

{15} The only other New Mexico case stating that a demand is required before the duty to defend arises is *American General Fire & Casualty Co. v. Progressive Casualty Co.*, 110 N.M. 741, 747, 799 P.2d 1113, 1119 (1990), which cited *Price* for that proposition.

That statement was made in the context of determining whether one insurer would be responsible for the costs of litigation incurred by another insurer. The first insurer under a homeowner's policy had begun defending the negligence lawsuit against its insured, but as the case progressed it became clear that the plaintiff's injuries fell within the insured's automobile policy with a different insurance company. *Id.* at 742–43, 799 P.2d at 1114–15. This Court stated that the automobile insurer "had a duty to provide a defense for [the insured] and that *the duty arose upon its notification of the relevant facts underlying the incident that indicated that the injuries to [the plaintiff] were incurred in connection with the use of the automobile.*" *Id.* at 747, 799 P.2d at 1119 (emphasis added); *see also Cincinnati Cos. v. W. Am. Ins. Co.*, 183 Ill.2d 317, 233 Ill.Dec. 649, 701 N.E.2d 499, 505 (1998) (stating that an insurer has sufficient notice such that the duty to defend is triggered when "the insurer . . . know[s] both that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies"). We therefore held that the automobile insurer was not responsible for the costs of the litigation incurred prior to its "receipt of notice that the suit implicated its coverage." *Am. Gen. Fire & Casualty Co.*, 110 N.M. at 747, 799 P.2d at 1119. Thus, even *American General Fire & Casualty Co.* seems to equate a "demand" with actual notice for purposes of triggering the duty to defend.

{16} We agree with Judge Wechsler that the Court of Appeals could have simply applied *Price* to this case and concluded that there were issues of fact as to whether a sufficient demand was made. *See Garcia*, 2007–NMCA–042, ¶ 40. The communications between Plaintiff and Insurance Exchange, between Insurance Exchange and Lloyd's, between Lloyd's and its New York counsel, and between Lloyd's and the Special Administrator, taken together, created a fact issue for the jury as to "whether . . . a demand for a defense was communicated to the insurance company." *Id.* ¶ 41. However, we believe that the rule announced by the Court of Appeals' majority more effectively protects

the expectations of the parties to the insurance contract and addresses more compelling policy concerns, which we discuss shortly. Thus, "while actual notice presumptively triggers a duty to defend, a jury may nevertheless find, when warranted by the facts, that the insured knowingly declined a defense, and the duty to defend was therefore not breached." *Id.* ¶ 25. As discussed previously, *Price* itself is not inconsistent with such an approach.

{17} Further, it is not unfair to apply the new rule to Lloyd's in this case because the record does not show that Lloyd's relied on the absence of an affirmative demand in deciding not to provide a defense or otherwise intervene in the proceedings. Rather, Lloyd's declined to step in based on incorrect advice from its New York counsel that the probate court did not have jurisdiction to hear a tort claim, and thus, any determination made by the probate court would have "no bearing on the merits."

{18} Of course, as pointed out by Judge Wechsler, the difference between the rule in *Price,* and that announced by the majority of the Court of Appeals in this case, is that the new rule changes the inquiry at the summary judgment stage. Thus, under the new rule, "if the insured can prove actual notice, summary judgment may be granted [for the insured] unless the insurance company submits evidence showing that the insured intended to decline a defense." *Id.* ¶ 43. Under the *Price* rule, on the other hand, summary judgment would be granted in favor of the insurer unless the insured could produce evidence that an adequate demand had been made. We agree with the Court of Appeals' majority that "sound policy considerations support a rule tying the duty to defend to actual notice of a claim." *Id.* ¶ 31. Such considerations include the following:

(1) "the insurer is usually in a better position than even a sophisticated insured to know the scope of the insurance contract and its duties under it," and (2) "allowing actual notice to trigger the duty to defend ... assure[s] or protect[s] the benefits of the insurance contract" because "[t]he insurer, having received consideration for inclusion of the insured on its policy, should not be allowed to evade its responsibilities under the policy as a result of the insured's ignorance."

*Id.* ¶ 26 (quoting *Cincinnati Cos.,* 233 Ill.Dec. 649, 701 N.E.2d at 504–05).

{19} We also agree that the rule does not "impose some kind of automatic duty [on insurers] to become involved in litigation." *Id.* ¶ 31. As noted by the majority below, "[w]hen actual notice is given to an insurer, the insurer may protect its interests 'simply by contacting the insured to ascertain whether the insurer's assistance is desired. If the insured indicates that it does not want the insurer's assistance, or is unresponsive or uncooperative, the insurer is relieved of its duty to defend.'" *Id.* (quoting *Cincinnati Cos.,* 233 Ill.Dec. 649, 701 N.E.2d at 504). Given that the entire purpose of the contract between the parties is for the insurer to defend and cover the liabilities incurred by its insured, it makes sense for the insurer to assume that the insured desires a defense and to seek clarification if any notice it receives is unclear on that point. Along these same lines, the Illinois Court of Appeals offered the following rationale for why the burden of communicating between the parties should be placed on the insurer and not the insured:

If it has actual notice a lawsuit has been filed against one of its insureds, the insurer understands its insured will require a defense. Furthermore, based on its experience, the insurer should assume its insured will desire the insurer provide such defense. Both parties are assumed to understand the ramifications of a lawsuit. Why then should the insurer receive the benefit of a rule requiring written tender ... ? Such a rule requires an insured to jump through meaningless hoops towards an absurd end: telling the insurer something it already knows. Such a rule injects a degree of gamesmanship into the insurer-insured relationship without providing any valid corresponding benefit. In fact, the only benefit of such rule is to create a possibility-where none would otherwise exist-for an insurer to escape an obligation it otherwise owes its insured.

*Federated Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 282 Ill.App.3d 716, 218 Ill. Dec. 143, 668 N.E.2d 627, 632–33 (1996).

{20} Lloyd's does not offer any reason why it is better to require the insured to formally and unequivocally demand a defense as opposed to requiring the liability insurer, which has received actual notice of a lawsuit against its insured, to actively ascertain whether the insured desires a defense. Balancing the two possibilities against one another, we conclude that the interests of fairness weigh in favor of placing the burden on the insurer, "who is in the better position, because of its experience, competence, and resources to conduct the task." *Id.*, 218 Ill. Dec. 143, 668 N.E.2d at 632. Thus, we adopt the conclusion of the Court of Appeals majority below that "the policy of encouraging insurers to perform their contractual obligations outweighs any requirement that allows insurers to default on their obligation to defend simply because the insured did not formally ask the insurer to do what the insurance contract already requires." *Garcia*, 2007–NMCA–042, ¶ 31.

**Notice Does Not Necessarily Have to Come Directly From the Insured**

{21} Lloyd's argues that even if actual notice suffices to trigger the duty to defend, such notice has to come directly from the insured or a person acting with the insured's authority. Thus, according to Lloyd's, because Plaintiff's attorney notified Insurance Exchange of the claim against the Perfetti Estate, which Insurance Exchange then forwarded to counsel for Lloyd's, the notice was ineffective because it was given by the insured's adversary. In support of this argument, Lloyd's cites to *L'Atrium on the Creek I, L.P. v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania,*

326 F.Supp.2d 787 (N.D.Tex.2004). That case held that notice received from the injured party's counsel is insufficient to trigger the duty to defend; rather, "it is the action by the insured in sending the suit papers to the insurer that triggers the insurer's obligations to tender a defense and answer the suit." *Id.* at 792 (quoted authority omitted).

{22} However, the insurer in *L'Atrium* acted in line with the approach we adopt here. Upon receiving notice from the injured party's attorney, the insurer advised both the attorney and its own insured that the insured had not made a demand. *Id.* at 791, 793. In sending notice to the insured, the insurer allowed the insured an opportunity to request a defense—which it did. *Id.* at 791–92. Had Lloyd's acted similarly in response to the notice it received from Plaintiff's attorney by way of Insurance Exchange, there would likely have been a clear answer as to whether the Perfetti Estate desired a defense. Moreover, if the Perfetti Estate had not responded to such notice, Lloyd's would have had at least some justification for assuming that its insured did not desire its assistance.

{23} As the record stands, however, all we have is a series of ambiguous communications between New York counsel for Lloyd's and the attorney for the Special Administrator that does not shed much light, at least at the summary judgment phase, as to whether the Perfetti Estate was affirmatively rejecting a defense. These communications could be read as a rejection of a defense, or they could simply state a belief, though erroneous, on the part of counsel for the Special Administrator that the Special Administrator had no authority to demand or reject a defense.[2] In any case, Lloyd's chose not to step in and seek clarification from the court about these matters, deciding instead to do nothing.

2. In its briefs, Lloyd's asserts that by these communications the Perfetti Estate "made it clear that it did not want to be ... represented by [Lloyd's]" and "did not need or want any assistance from [Lloyd's]." We disagree. All that is clearly expressed in the communications is the Special Administrator's belief that she lacked the authority to deny the claim. It is true that the Special Administrator stated in an affidavit that she "never requested or demanded that any insurance company do anything about or 'defend' against the Garcia Notice of Claim," but this was not because she did not desire such a defense; rather, it was because she thought that "[t]here was no wrongful death suit to defend." Given the bizarre set of circumstances in this case involving the death of the insured prior to the filing of any claim and the complicated probate proceedings that followed, it is very difficult to view this evidence as clearly demonstrating an affirmative rejection of a defense. That is a question for the fact-finder.

Thus, in light of its actions (or inaction), the argument posited by Lloyd's that only actual notice coming directly from the insured will presumptively trigger the duty to defend rings hollow.

{24} Other cases support the proposition that actual notice need not come from the insured to trigger the duty to defend. For instance, *Illinois Founders Insurance Co. v. Barnett*, 304 Ill.App.3d 602, 237 Ill. Dec. 605, 710 N.E.2d 28 (1999), dealt with the same facts that are presented in this case. In *Barnett*, the injured party's attorney sent the lawsuit papers to the insurance broker, which then forwarded those papers to the insurer. *Id.*, 237 Ill.Dec. 605, 710 N.E.2d at 33. The court held that because the insurer had sufficient information to locate and defend the lawsuit, the insurer had a duty to defend; it did not matter that notice was not given directly by the insured. *Id.* In this case, as in *Barnett*, counsel for Plaintiff, the injured party, notified Insurance Exchange, the broker, of Plaintiff's claim, and Insurance Exchange then forwarded the notice to Lloyd's.

{25} We prefer to follow the approach taken in *Barnett*. We note that the technical approach to the question of actual notice advocated by Lloyd's is really just another way of saying that there must be some sort of specific demand made before the duty to defend is triggered, and as such it does nothing to advance the policy considerations we have articulated above. Nor does Lloyd's point to a persuasive countervailing concern that would weigh in favor of requiring notice to come directly from the insured. As we have said, upon receiving notice of a claim from whatever source, if such notice is unclear regarding a defense, all the insurer has to do is contact the insured and inquire whether a defense is desired. We therefore hold that, for the purposes of determining when an insurer's duty to defend arises, "[a]ctual notice means notice from 'any source sufficient to permit the insurer to locate and defend its insured.'" *Barnett*, 237 Ill.Dec. 605, 710 N.E.2d at 32 (quoting *Ins. Co. v. Fed. Kemper Ins. Co.*, 291 Ill.App.3d 384, 225 Ill.Dec. 444, 683 N.E.2d 947, 950 (1997); *see also Olivieri v.*

*Coronet Ins. Co.*, 173 Ill.App.3d 867, 124 Ill. Dec. 95, 528 N.E.2d 986, 989 (1987) ("Notice provided by the injured party is as good as notice supplied by the insured for the purpose of fulfilling the insured's obligation [to provide notice of a claim within a reasonable time] and is measured by the same standards as if it had been conveyed by the insured."). The notice supplied by Insurance Exchange to Lloyd's satisfied this standard.

{26} Because Lloyd's had actual notice of Plaintiff's claim, there is a presumption that the duty to defend was triggered. The majority below correctly noted that "[t]he key inquiry in this case ... is whether under all the circumstances, including the correspondence exchanged between the Perfetti Estate and [Lloyd's], the Perfetti Estate was foregoing a defense from [Lloyd's]." *Garcia*, 2007–NMCA–042, ¶ 32. Like the majority below, we view the letter from the Special Administrator's attorney as ambiguous and capable of being read "either as a rejection of a defense by [Lloyd's] or as a statement of the attorney's views on the limitations of the Special Administrator's duties with no bearing on the duty to defend." *Id.* ¶ 32. The key inquiry is therefore fact-driven, requiring a jury to interpret an ambiguous letter, and is not appropriately decided on summary judgment.

**CONCLUSION**

{27} We affirm the Court of Appeals' decision reversing the district court's grant of summary judgment in favor of Lloyd's and remand for further proceedings consistent with this Opinion.

{28} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and CHARLES W. DANIELS, Justices.