IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-005

Filing Date:  February 4, 2009

Docket No. 30,735

MARY SALAS,

    Plaintiff-Respondent,

v.

MOUNTAIN STATES MUTUAL
CASUALTY COMPANY,

    Defendant-Petitioner.

ORIGINAL PROCEEDINGS ON CERTIORARI
Karen L. Parsons, District Judge

Atwood, Malone, Turner & Sabin, P.A.
Cord D. Borner
Robert E. Sabin
Roswell, NM

for Petitioner

Bryant, Schneider-Cook Law Firm, P.A.
Angie Schneider-Cook
Daniel A. Bryant
Ruidoso, NM

for Respondent

## OPINION

**MAES, Justice.**

{1}     The dispositive issue in this appeal is whether an insurer may deny or limit insurance coverage to a known class-two insured in reliance on an undisclosed consent-to-settle exclusionary provision.  We conclude that Mountain States Mutual Casualty Company (Defendant) had actual knowledge that Mary Salas (Plaintiff) was a class-two insured who had suffered a compensable injury in an insured motor vehicle and, therefore, had an affirmative duty to disclose to Plaintiff the insurance coverage available to her and its terms

1

and conditions. Because Defendant failed to inform Plaintiff of her rights and responsibilities under the insurance policy, we conclude that Defendant breached its duty of disclosure. Accordingly, Defendant is equitably estopped from enforcing the consent-to-settle exclusionary provision to deny or limit Plaintiff's entitlement to underinsured motorist (UIM) benefits.

## I.  FACTS AND PROCEDURAL HISTORY

{2}     The record reflects the following undisputed facts. On March 2, 2000, Plaintiff was a passenger in a vehicle driven by her daughter-in-law, Teresa Salas, when that vehicle was rear-ended by Nancy Virden. Salas' vehicle was insured by Defendant, while Virden's vehicle was insured by Farmers Insurance Company of Arizona (Farmers). Under Salas' insurance policy (the Mountain States policy), Plaintiff was a class-two insured entitled to medical payments and UIM coverage because she was a passenger in the insured motor vehicle at the time of the collision. In early June 2000, Plaintiff, who had sustained physical injuries in the collision, submitted to Defendant a claim for medical payments in the approximate amount of $7,000. On June 29, 2000, Defendant issued Plaintiff a check in the amount of $5,000, the limit for medical payments available to Plaintiff under the Mountain States policy.

{3}     At some point in June 2000, Plaintiff hired an attorney and, in August 2002, she filed a personal injury action against Virden and Farmers, seeking compensatory damages for her physical injuries. Neither Plaintiff nor her attorney either requested or received a copy of the Mountain States policy from Defendant and, therefore, they were unaware of the availability of UIM coverage and the consent-to-settle exclusionary provision. Indeed, Plaintiff's attorney believed Salas' vehicle to be uninsured because a police report erroneously indicated that Salas had no insurance at the time of the collision

{4}     In the meantime, Defendant submitted a subrogation demand to Farmers, seeking reimbursement of the $5,000 that it had paid Plaintiff for medical payments under the Mountain States policy. Between June 2000 and March 2003, Defendant contacted Farmers periodically to inquire about the status of its subrogation claim. At some point in the course of these communications, Defendant apparently learned that Plaintiff had filed an action against Farmers, but that Farmers had "not yet settled [the] case with [its] insured."

{5}     On March 4, 2003, Plaintiff, Farmers, and Virden entered into a settlement agreement, whereby Plaintiff executed a release of liability in favor of Farmers and Virden in exchange for the limit of Virden's liability insurance policy, $30,000. When Plaintiff's attorney received the settlement check, he "was surprised to see that [Defendant] was listed as a payee." Upon further inquiry, Plaintiff's attorney discovered that Plaintiff was a class-two insured under the Mountain States policy, that Plaintiff previously had received $5,000 in medical payments from Defendant, and that Defendant had filed a subrogation claim against Farmers. On April 22, 2003, Plaintiff's attorney forwarded the settlement check to

Defendant, which endorsed the check and received $3,250 in full satisfaction of its subrogation claim ($5,000 minus 35% in attorney's fees).

**{6}** On July 10, 2003, Plaintiff submitted to Defendant a claim for UIM benefits under the Mountain States policy. In support of her claim, Plaintiff provided Defendant with medical bills totaling slightly less than $27,000 and medical reports indicating that she has a "lifelong condition." Defendant denied Plaintiff's claim, alleging that she was not entitled to UIM benefits because she had breached the consent-to-settle exclusionary provision of the Mountain States policy by settling her personal injury action against Farmers and Virden without Defendant's consent.[1]

**{7}** On August 13, 2003, Plaintiff filed a complaint against Defendant in district court alleging (1) breach of insurance contract, and (2) unfair claims practices, contrary to NMSA 1978, Section 59A-16-20 (1984, as amended through 1997). Following discovery, Defendant moved and Plaintiff cross-moved for summary judgment as a matter of law. After extensive briefing and oral argument, the district court rendered summary judgment in favor of Defendant. The district court reasoned that "Defendant has shown that the tortfeasor was unlikely to be judgment proof; and therefore, that it has been substantially prejudiced by the fact that . . . Plaintiff settled with the tortfeasor." The district court further reasoned that

> there is no duty on the part of an insurer under the facts of this case to provide the additional insured with information prior to any request . . . to do so. In this case, the burden should be on the additional insured to investigate whether a known policy includes coverage for whatever purpose.

**{8}** The Court of Appeals reversed the judgment of the district court. *Salas v. Mountain States Mut. Cas. Co.*, 2007-NMCA-161, ¶ 48, 143 N.M. 113, 173 P.3d 35. The Court concluded that, although Plaintiff had breached the consent-to-settle exclusionary provision, which resulted in presumed prejudice to Defendant, Defendant nonetheless had "failed to put Plaintiff on notice of the provisions of the policy and should be estopped from enforcing its exclusionary provisions." *Id.* ¶ 7. The Court did not address Plaintiff's claim regarding Defendant's alleged bad-faith and unfair claims practices, even though that claim properly had been raised, briefed, and argued on appeal.

**{9}** In reversing the judgment of the district court, the Court of Appeals recognized that a tension exists between the insurer's duty "to put its insureds on notice as to the provisions of its policy[,]" *id.* ¶¶ 34, 38, and the insured's responsibility to investigate the scope of available insurance coverage. *Id.* ¶ 35. The Court resolved this tension in favor of Plaintiff, holding that "insurers such as [Defendant] have a primary responsibility to provide their insureds reasonable notice of the contents of their policy by providing a copy of the policy

---

[1] The consent-to-settle exclusionary provision provides in relevant part: "We do not provide Uninsured Motorist Coverage sustained by any person . . . [i]f that person or the legal representative settles the bodily injury claim without our consent."

3

or some other documentation of its terms." *Id.* ¶ 38 (internal quotation marks and citation omitted). The Court reasoned that the Plaintiff's status as a class-two insured, rather than a class-one insured

> does not change the principle that the insured must be put on notice of provisions in the policy that the insurer wants to enforce against him or her. The simplest way to provide notice is by giving the [c]lass[-two] insured a copy of the policy–or its UIM provisions at the least. This is not an onerous responsibility in that it would only apply to [c]lass[-two] insureds of whom the insurance company is aware. Surely, it is routine practice for insurers to identify all occupants in covered vehicles involved in collisions reported to them. Failure to do so should prevent the insurer's reliance on exclusionary provisions such as those we consider here.

*Id.* ¶ 46. "Given that there is no question on this record that Plaintiff was not aware of the consent-to-settle provision," the Court concluded that Defendant "may not use it to deny coverage." *Id.* ¶ 47.

**{10}** The dissenting opinion disagreed that Defendant had "an affirmative obligation . . . to provide [Plaintiff] with notice of the terms of the underinsurance policy[,]" noting that "[t]his asserted duty has no basis in tort, contract, or public policy." *Id.* ¶ 50 (Vigil, J., dissenting). Instead, the dissenting opinion concluded that "[t]he real question presented by this case is whether Plaintiff's failure to comply with the [consent-to-settle] provision of the underinsurance policy is excused." *Id.* ¶ 54. It determined that "Plaintiff's failure to learn of the existence of the terms of the underinsurance coverage that was available to her was unreasonable and unjustified in light of the undisputed material facts." *Id.* ¶ 55.

**{11}** We granted Defendant's petition for writ of certiorari to resolve whether (1) Defendant is estopped from enforcing the consent-to-settle exclusionary provision because it breached its duty to disclose to Plaintiff, a known class-two insured, the terms and conditions governing coverage under the Mountain States policy; and (2) the Court of Appeals should have addressed Plaintiff's claim for bad-faith and unfair claims practices. *Salas v. Mountain States Mut. Cas. Co.*, 2007-NMCERT-012, 143 N.M. 213, 175 P. 3d 307.

## II.    STANDARD OF REVIEW

**{12}** "Our review on a grant of summary judgment is de novo." *Garcia v. Underwriters at Lloyd's, London*, 2008-NMSC-018, ¶ 12, 143 N.M. 732, 182 P.3d 113. "Summary judgment is only appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. All reasonable inferences from the record are construed in favor of the non-moving party." *Id.* (internal quotation marks and citation omitted). Moreover, the existence of a duty is a question of law, which we review de novo. *See, e.g., Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 43, 133 N.M. 669, 68 P.3d 909 ("The existence of a duty . . . remains a question of law for the trial court to determine

and is answered by reference to legal precedent, statutes, and other principles comprising the law.").

## III.     DISCUSSION

### A.     Whether Defendant had a duty to disclose to Plaintiff the terms and conditions governing coverage under the Mountain States policy

**{13}**     "Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement.  Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Watson Truck & Supply Co. v. Males*, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990) (internal quotation marks and citations omitted).

> Thus, with insurance contracts, as with every contract, there is an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract.  More specifically, this means that an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration.

*Dairyland Ins. Co. v. Herman*, 1998-NMSC-005, ¶ 12, 124 N.M. 624, 954 P.2d 56 (internal quotation marks and citations omitted).  Accordingly, if an insurer fails to disclose to its insured the existence of an exclusionary provision contained in the insurance contract, then the covenant of good faith and fair dealing precludes the insurer from relying on the provision to limit or deny the insured's right to coverage.  *See Homestead Invs., Inc. v. Found. Reserve Ins. Co.*, 83 N.M. 242, 245, 490 P.2d 959, 962 (1971) ("[T]he insured should be able to rely upon the provisions of his policy or memorandum of insurance to inform him of all his rights and duties under his insurance contract."); *Willey v. United Mercantile Life Ins. Co.*, 1999-NMCA-137, ¶¶ 1, 13-19, 128 N.M. 98, 990 P.2d 211 (holding that the insured established a prima facie case of estoppel barring the insurer's statute of limitations defense because the insurer failed to "deliver the Policy to [the insured] before expiration of the limitations period"); *see also Young v. Seven Bar Flying Serv., Inc.*, 101 N.M. 545, 548, 685 P.2d 953, 956 (1984) (holding that an insurer's failure to disclose exclusionary provisions will preclude it from relying on those provisions to limit or deny insurance coverage only when the "insurer gives the impression that all of the material provisions of an insurance contract are contained in a document furnished to the insured by the insurer"); *cf. Ramirez v. USAA Cas. Ins. Co.*, 285 Cal. Rptr. 757, 761 (Ct. App. 1991) ("One important facet of the [covenant of good faith and fair dealing] is the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy.  In particular, in situations in which an insured's lack of knowledge may potentially result in a loss of benefits or a forfeiture of rights, an insurer has been required to bring to the insured's attention relevant information so as to enable the insured to take action to secure rights afforded by the policy." (internal quotation marks and citation omitted)); Thomas M. Fleming, Annotation, *Insurer's Duty, and Effect of its Failure, to Provide Insured or Payee With Copy of Policy or Other Adequate Documentation of its Terms*, 78 A.L.R. 4th 9, § 2(a) (1990) ("A number of courts

have recognized that insurers as a whole, or particular insurers, have a general duty to provide the named insured, payee, or other protected party with a copy of the policy or other adequate documentation of its terms.").

**{14}** In the context of uninsured/underinsured motorist coverage, there are three distinct classes of insureds: (1) the named insureds and members of a named insured's household [(class-one insureds)], (2) persons who are injured while occupying an insured vehicle [(class-two insureds)], and (3) persons who sustain consequential damages as a result of personal injuries sustained by persons who are [class-one] or [class-two] insureds. Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 4.9(e), at 400 (1988); *see also Konnick v. Farmers Ins. Co.*, 103 N.M. 112, 115, 703 P.2d 889, 892 (1985) (defining class-one insured as the named insured as stated in the policy, the spouse, and relatives residing in the household and class-two insured as any person while occupying an insured motor vehicle).

*Phoenix Indem. Ins. Co. v. Pulis*, 2000-NMSC-023, ¶ 7, 129 N.M. 395, 9 P.3d 639 (internal quotation marks omitted). In the present case, Plaintiff was a class-two insured under the Mountain States policy because she was a passenger in the insured motor vehicle at the time of the collision.

**{15}** Defendant does not dispute that it had a duty to disclose the terms and conditions governing coverage under the Mountain States policy to its class-one insureds (*i.e.*, the named insured and family members who reside in the named insured's household). Defendant argues, however, that this duty did not extend to Plaintiff, a class-two insured, because Plaintiff was a third-party beneficiary to the insurance contract, and "[t]here is no requirement that a third-party beneficiary assent to the terms of the contract" before those terms may be enforced.

**{16}** The duty of disclosure is premised on the principle of fundamental fairness, which dictates that an insurer must notify a known insured of the scope of available insurance coverage and the terms and conditions governing that coverage regardless of whether the insured is a party to the insurance contract or a third-party beneficiary thereof. *See, e.g., Ramirez*, 285 Cal. Rptr. at 762-63 (holding that the insured may amend its complaint to allege that the insurer breached its duty of good faith and fair dealing because it allegedly failed to disclose the existence of UIM coverage to a known class-two insured); *Palombo v. Broussard*, 370 So. 2d 216, 220 (La. Ct. App. 1979) (holding that insurer breached its duty of good faith and fair dealing because it "knew the extent of injuries suffered by the parties, . . . had a good estimate of the amount of compensation required[,] . . . knew the amount of coverage it had available to each individual, [and] yet it did not convey to its [class-two] insured this information"). As the Court of Appeals of Michigan observed in *Gardner v. League Life Insurance Company*, 210 N.W.2d 897 (Mich. Ct. App. 1973), a case wherein the insurer failed to inform a known third-party insured of the terms and conditions governing death and disability coverage:

> The equity conscience of this Court, having been aroused, finds that it is beyond question that the borrower subjected to eligibility requirements

be given notice thereof. The fact that the present insurance scheme, with premiums being paid by the credit union, places each member borrower in the status of a third-party beneficiary and that each borrower under the group policy has no individual identity cannot change this basic tenet of fairness. . . . The injustice of informing a disabled borrower at the time the claim is filed that he has no insurance protection is obvious and the need for notice is beyond peradventure.

*Id.* at 898.

**{17}** Consistent with the principle of fundamental fairness, we conclude that the duty of disclosure is not limited to class-one insureds, but rather extends to all insureds who have sustained compensable injuries under the terms and conditions of the insurance policy and of whom the insurer has actual knowledge. Because the duty of disclosure owed to class-two insureds is triggered only when the insurer receives *actual knowledge* of the identity of a class-two insured with an allegedly compensable claim, this duty does not require the insurer to seek out the identity of class-two insureds. To the extent that the Court of Appeals' opinion may be construed to impose on insurers an affirmative duty to investigate the identity of all passengers in covered vehicles involved in collisions reported to them, we disagree. *See Salas*, 2007-NMCA-161, ¶ 46. We do agree with the Court of Appeals, however, that the duty of disclosure is not an "onerous responsibility" because it extends only to those class-two insureds of whom the insurance company has actual knowledge and it may be fulfilled simply by providing the known class-two insured with a "copy of the policy or some other documentation of its terms." *Id.* ¶¶ 38, 46 (internal quotation marks and citation omitted).

**{18}** In the present case, Plaintiff was a class-two insured who had sustained a compensable injury while a passenger in the insured motor vehicle. After the collision, Plaintiff promptly filed a claim with Defendant seeking medical payment benefits under the Mountain States policy. At this point, Defendant had actual knowledge of Plaintiff's status as a class-two insured.[2] This knowledge triggered Defendant's duty to disclose to Plaintiff the benefits to which she might be entitled under the Mountain States policy, and the actions she must take, or not take, as the case may be, to secure her entitlement to these benefits. To conclude otherwise would permit an insurer passively to rely on a known class-two insured's ignorance of her rights and responsibilities under the insurance policy as an excuse to limit or deny coverage. Such a trap for the unwary insured violates the covenant of good faith and fair dealing. *See* Alan I. Widiss, *Obligating Insurers to Inform Insureds About the Existence of Rights and Duties Regarding Coverage for Losses*, 1 Conn. Ins. L.J. 67, 70 (1995) ("Following notification of an occurrence, I believe an insurer is obligated to disclose all applicable benefits, or to clearly inform insureds about the existence of rights and duties

---

[2] For the purpose of this appeal, we need not define with particularity what constitutes actual knowledge. It is apparent to us, however, that at the very least, an insurer has actual knowledge of the identity of a class-two insured when that insured files a claim with the insurer seeking benefits for an allegedly compensable injury.

regarding all coverages, or to explain why the insurance benefits will not be paid in order to (a) fulfill the insurer's contractual commitment, (b) comply with the obligation—implied as a matter of law in all contracts—to deal fairly and in good faith, (c) protect the insured's reasonable expectations, and (d) avoid omissions that could constitute fraudulent misrepresentation."). Because Defendant failed to inform Plaintiff of the availability of UIM coverage, or of the existence of the consent-to-settle exclusionary provision, we conclude that Defendant breached its duty of disclosure.[3]

**{19}** Furthermore, under the unique circumstances of the present case, not only did Defendant have actual knowledge of Plaintiff's status as a class-two insured with a compensable claim, but Defendant also had actual knowledge of Plaintiff's personal injury action against Virden and Farmers, which Defendant knew was reasonably likely to end in a settlement. Additionally, Defendant knew that Plaintiff was required to procure Defendant's consent prior to settlement to preserve her entitlement to UIM benefits, but that Plaintiff likely was unaware of this requirement because she had neither requested nor received a copy of the Mountain States policy from Defendant. These facts further buttress and support our conclusion that Defendant's silence in the face of Plaintiff's apparent ignorance was inequitable, unfair, and inconsistent with the covenant of good faith and fair dealing.

**{20}** Our conclusion is supported by the public policy principles that animate the UIM statute, NMSA 1978, Section 66-5-301 (1978, as amended through 1983). As we previously have observed, "[t]he object of compulsory uninsured motorist insurance is . . . to protect persons injured in automobile accidents from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 329, 533 P.2d 100, 102 (1975) (internal quotation marks and citation omitted). "The statute was intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990). These purposes would be frustrated if insurers were permitted to rely on exclusionary provisions of which known class-two insureds had no prior notice to limit or deny UIM coverage. *See* Widiss, *supra*, at 86-87 ("When a coverage is provided as a result of a statutory mandate, if an insurer does not inform an insured about benefits that are available following receipt of notification that any injury has occurred, it frustrates the public policy manifested by the statutes mandating coverage. Accordingly, the public's interest in assuring indemnification for persons injured in motor vehicle accidents provides substantial support for the proposition that the standard of conduct for an insurer's employees and agents is heightened when such statutory mandates have been adopted for a particular type of insurance coverage." (footnotes omitted)).

---

[3] We caution that nothing in this opinion should be construed to relieve the class-two insured or the class-two insured's attorney of the duty reasonably to investigate the availability and scope of insurance coverage.

**{21}** We recognize that our "[UIM] statute was specifically designed to protect [class-one] insureds," not class-two insureds. *Mountain States Mut. Cas. Co. v. Martinez*, 115 N.M. 141, 143, 848 P.2d 527, 529 (1993). Nonetheless, under the circumstances of the present case, Plaintiff was, by policy and regulatory definition, an "insured" for the purpose of UIM coverage. *See* 13.12.3.14(A)(2) NMAC. As such, Defendant had a duty to treat Plaintiff with the same fairness and in the same good faith as a class-one insured. For the reasons previously explained, this duty included an affirmative obligation to inform Plaintiff of the terms and conditions governing coverage under the Mountain States policy.

**{22}** Defendant claims that the duty of disclosure to known class-two insureds should be limited to those situations in which (1) the insurer is aware of the class-two insured's rights, or unreasonably fails to recognize those rights; (2) the class-two insured has not retained a professional advisor and, therefore, is reliant on the insurer to inform her of her rights; and (3) the insurer is on notice that the class-two insured is ignorant of her rights. *See* William T. Barker and Donna J. Vobornik, *The Scope of the Emerging Duty of First-Party Insurers to Inform Their Insureds of Rights Under the Policy*, 25 Tort & Ins. L.J. 749, 758 (1990). Under this standard, Defendant claims that it did not owe Plaintiff a duty of disclosure because (1) it was not aware of Plaintiff's UIM claim; (2) Plaintiff was not reliant on Defendant to inform her of her rights because she had retained an attorney; and (3) it did not know that Plaintiff was ignorant of her rights. We are not persuaded.

**{23}** First, we recognize that "[n]otice of one type of claim does not of itself give notice of another type of claim[,]" *Salas*, 2007-NMCA-161, ¶ 18, and, therefore, notice of Plaintiff's medical payments claim did not give Defendant notice of Plaintiff's UIM claim. *Id.* ¶ 24. It did, however, provide Defendant with notice of Plaintiff's status as a class-two insured who had suffered an injury compensable under the Mountain States policy while a passenger in the insured motor vehicle. Defendant, therefore, had actual knowledge of Plaintiff's identity and entitlement to benefits under the Mountain States policy, which, in turn, triggered its duty of disclosure.

**{24}** Second, we conclude that Plaintiff's retention of an attorney did not relieve Defendant of its duty of disclosure. As a prominent scholarly commentator has observed,

> [t]he proposition that an insurer is not obligated to provide information about insurance benefits when an insured is represented by a professional advisor, such as an attorney, is a limitation without a sound foundation in regard to first-party insurance coverages (such as accident insurance, disability insurance, life insurance, medical payments insurance, and uninsured/underinsured motorist insurance). By making disclosures of the possible existence of coverage, rights that are collateral to the coverage, and conditions that must be complied with to preserve the right to indemnification, insurance companies are doing no more than (1) fulfilling the contractual obligations owed to insureds, (2) complying with the duty to deal fairly and in good faith with the insureds, (3) protecting the reasonable expectations of the insureds, and (4) avoiding the commission of a

9

misrepresentation on the insureds. The involvement of an attorney on behalf of an insured does not, and should not, affect those responsibilities of an insurance company.

Widiss, *supra*, at 90 (footnote omitted); *see also Ramirez*, 285 Cal. Rptr. at 762 (rejecting the insurer's claim that the class-two insured's retention of an attorney relieved the insurer of its duty of disclosure).

**{25}** Third, we reject Defendant's claim that an insurer's actual knowledge of a known class-two insured's ignorance of her rights is a condition precedent to the imposition of a duty of disclosure. "[T]he duty of good faith does not permit the insurer passively to assume that its insured is aware of his rights under the policy. The insurer must instead take affirmative steps to make sure that the insured is informed of his remedial rights." *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 85 (1987) (footnote and citation omitted).

> Once an insurer has received notice of an occurrence, there is no reason to restrict the obligation to disclose relevant information about the insured's rights and duties. *If* the insurer's employees or claims representatives process the claim without additional input from the claimants, full responsibility rests on those individuals. *If* additional actions by claimants or beneficiaries are necessary, the insurer should be obligated to provide complete information about the coverages that may provide benefits, what has to be done to initiate a claim for the insurance benefit, the period within which those actions must be done, and all ancillary rights. Anything less falls short of the insurer's contractual obligations.

Widiss, *supra*, at 89.

**{26}** Because Defendant breached its duty of disclosure, we conclude that Defendant is equitably estopped from enforcing the consent-to-settle exclusionary provision to limit or deny Plaintiff's entitlement to UIM benefits under the Mountain States policy. *See, e.g., Homestead Invs., Inc.*, 83 N.M. at 245 (holding that the insurer was equitably estopped from enforcing an exclusionary provision to deny coverage because it failed to disclose the provision to its insured). Therefore, the district court improperly rendered summary judgment in favor of Defendant.

**B.      Whether the Court of Appeals improperly failed to address Plaintiff's claim for bad faith and unfair claims practices**

**{27}** Defendant next claims that the Court of Appeals improperly failed to address the propriety of the district court's entry of summary judgment in favor of Defendant with respect to Plaintiff's claim for bad-faith and unfair claims practices. Our review of the Court of Appeals' opinion reveals that it contains no discussion of Plaintiff's claim for bad faith and unfair claims practice. *See Salas*, 2007-NMCA-161. Additionally, our review of the record reveals that this claim was properly preserved in the trial court and properly presented to the Court of Appeals on direct appeal. Accordingly, we conclude that the Court of

Appeals should have addressed the merits of this claim and, therefore, we remand the present case to the Court of Appeals for resolution of this issue. *See, e.g., McMinn v. MBF Operating Acquisition Corp.*, 2007-NMSC-040, ¶ 54, 142 N.M. 160, 164 P.3d 41 (remanding case to the Court of Appeals with instruction to resolve the remaining issues).

## IV. CONCLUSION

**{28}**    Because Defendant had actual knowledge of Plaintiff's status as a class-two insured who had suffered an injury that is compensable under the Mountain States policy while a passenger in the insured motor vehicle, we conclude that Defendant had an affirmative duty to disclose to Plaintiff the availability of insurance coverage and the terms and conditions governing that coverage. Defendant failed to disclose this information to Plaintiff and, therefore, breached its duty of disclosure. Thus, Defendant is equitably estopped from enforcing the consent-to-settle exclusionary provision to limit or deny Plaintiff's entitlement to UIM benefits. We remand the present case to the Court of Appeals for consideration of Plaintiff's claim for bad faith and unfair claims practices.

**{29}    IT IS SO ORDERED.**

 

 

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *Salas v. Mountain States Mutual Casualty Co.*, No. 30, 735**

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **IN** | **INSURANCE** |
| IN-EC | Exclusion Clause |

IN-GF          Good Faith
IN-UM          Uninsured or Underinsured Motorist