**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

DELBERT SOSEEAH, for himself and others similarly situated; MAXINE SOSEEAH, for herself and others similarly situated; JOHN BORREGO, for himself and other similarly situated,

     Plaintiffs-Appellees,

v.

SENTRY INSURANCE, a Mutual Company, and any other related business entities including parent companies, consolidated tax filers and subsidiaries including, DAIRYLAND INSURANCE COMPANY; PEAK PROPERTY AND CASUALTY INSURANCE CORPORATION; and VIKING INSURANCE COMPANY OF WISCONSIN,

    Defendants-Appellants.

No. 14-2199

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 1:12-CV-01091-RB-KK)**

---

John R. Gerstein, of Troutman Sanders LLP, Washington, D.C. (Gabriela Richeimer of Troutman Sanders LLP, Washington, D.C.; Jennifer A. Noya and Alex C. Walker of Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico, with him on the briefs), for Defendants-Appellants.

John C. Bienvenu, of Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu LLP, Santa Fe, New Mexico (Kristina Martinez of Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu LLP, Santa Fe, New Mexico; Linda G. Hemphill of The Hemphill Firm P.C., Santa Fe, New Mexico; and John Howard, Attorney at Law, Santa Fe, New Mexico, with him on the brief), for Plaintiffs-Appellees.

---

Before **BRISCOE, McKAY** and **McHUGH**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Plaintiffs Delbert Soseeah, Maxine Soseeah and John Borrego filed this action against defendants Sentry Insurance, Dairyland Insurance Company, Peak Property and Casualty Insurance Company, and Viking Insurance Company of Wisconsin (collectively Sentry) claiming, in part, that Sentry failed to timely and properly notify them and other Sentry automobile insurance policyholders of the impact of two New Mexico Supreme Court decisions regarding the availability of uninsured and underinsured motorist coverage under their respective policies. The district court granted plaintiffs' motion for class certification. Sentry subsequently sought and was granted permission to appeal the district court's class certification ruling. Exercising jurisdiction pursuant to 28 U.S.C. § 1292(e) and Fed. R. Civ. P. 23(f), we reverse and remand for further consideration of plaintiffs' motion for class certification.

2

I

*The <u>Weed Warrior</u> and <u>Jordan</u> decisions*

On October 18, 2010, the Supreme Court of New Mexico issued two related

decisions addressing the provision of uninsured/underinsured motorist (UM/UIM)

coverage by insurers to New Mexico residents.  In the first decision, <u>Progressive</u>

<u>Northwestern Insurance Co. v. Weed Warrior Services</u>, 245 P.3d 1209 (N.M.

2010), the New Mexico Supreme Court "consider[ed] the duty imposed on

insurers to offer uninsured/underinsured motorist (UM/UIM) coverage under

NMSA 1978, Section 66-5-301 (1983)."  245 P.3d at 1210.  More specifically, the

New Mexico Supreme Court addressed the question, certified to it by this court,

"of whether the election by an insured to purchase UM/UIM coverage in an

amount less than the policy liability limits constitutes a rejection of the maximum

amount of UM/UIM coverage permitted under Section 66-5-301."  Id.  After

reviewing the language of the statute and surveying its own case law interpreting

that statute, the New Mexico Supreme Court

> conclude[d] that Section 66-5-301 requires an insurer to offer
> UM/UIM coverage in an amount equal to the liability limits of the
> policy and that the choice of the insured to purchase any lower
> amount functions as a rejection of that maximum amount of coverage
> statutorily possible.

Id. at 1214.  Consequently, the New Mexico Supreme Court held that "the insurer

may not exclude the maximum possible level of UM/UIM coverage in an auto

liability policy unless it has offered it to the insured and the insured has exercised

3

the right to reject the coverage through some positive act." Id. at 1213 (internal quotation marks omitted).

The second case, Jordan v. Allstate Insurance Co., 245 P.3d 1214 (N.M. 2010), was intended by the New Mexico Supreme Court as a companion to Weed Warrior in order "to provide guidance on the technical requirements for valid offers and rejections of UM/UIM coverage." 245 P.3d at 1219. The court held

> that a rejection of UM/UIM coverage equal to the liability limits in an automobile insurance policy must be made in writing and must be made a part of the insurance policy that is delivered to the insured. In order to honor these requirements effectively, insurers must provide the insured with the premium charges corresponding to each available option for UM/UIM coverage so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled. If an insurer fails to obtain a valid rejection [for any reason], the policy will be reformed to provide UM/UIM coverage equal to the limits of liability.

Id. at 1217. The court also held that its decision applied retroactively and was not limited to prospective application. Id. at 1222-23. And the court emphasized that the cost of reforming existing policies would be borne solely by insurers. Id. at 1223 ("On balance, we deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law, than to let the burdens fall on non-expert insureds, who are the Legislature's intended beneficiaries.").

*The filing of this action*

On September 18, 2012, plaintiffs Delbert and Maxine Soseeah filed a

4

purported class action complaint against Sentry in New Mexico state district court. The complaint alleged that Delbert Soseeah, after being injured in a motor vehicle accident, made a claim for UM/UIM benefits under two policies of automobile insurance issued by Sentry to Mrs. Soseeah. According to the complaint, Mrs. Soseeah "never executed a valid waiver of UM/UIM coverage under the" two policies and, consequently, Mr. Soseeah "demanded that . . . Sentry reform" the two policies "to provide stacked uninsured/underinsured motorist coverage limits equal to the limits of the liability coverage on each of the vehicles covered by the" policies "in accordance with the decisions in *Jordan* and *Weed Warrior*." Dist. Ct. Docket No. 1, Exh. A at 4. Sentry purportedly refused to reform the policies and rejected Mr. Soseeah's claim for UM/UIM benefits. Id. The complaint alleged that Sentry, by doing so, violated New Mexico's Unfair Practices Act (UPA), N.M. Stat. Ann. § 57-12-1 et seq., violated a portion of New Mexico's Insurance Code known as the Trade Practices and Frauds Act (TPFA), N.M. Stat. Ann. § 59A-16-1 et seq., breached the implied covenant of good faith and fair dealing, and breached the terms of the two policies.

Notably, the complaint alleged that the Soseeahs' claims were representative of "all Sentry-insured New Mexico residents entitled to the benefits of UM/UIM coverage who failed to receive notification from . . . Sentry that UM/UIM coverage limits were, as a matter of law, reformed [by Weed Warrior and Jordan] to provide coverage equal to liability limits." Id. at 6-7. The

5

complaint in turn alleged that the "action should proceed as a class action" under New Mexico state law. Id. at 8. Lastly, the complaint alleged that the named plaintiffs and the class should "recover treble damages" and "attorney's fees and costs" in connection with their UPA claim, id. at 11, damages in connection with their TPFA claim, id. at 13, reformation of their policies to provide "UM/UIM coverage with limits in an amount equal to the limits of the liability coverage of the policies at issue," id. at 13, actual and punitive damages in connection with their claim for breach of the implied covenant of good faith and fair dealing, id. at 14, actual damages in connection with their breach of contract claim, id., injunctive relief "requiring that . . . Sentry be enjoined from continuing practices that violate the statutory duties as well as the contractual and legal obligations owed to the [named] Plaintiffs and the Class," id., a "declaratory judgment establishing the respective rights and obligations of the parties with respect to the claims set forth" in the complaint, id. at 15, and punitive damages, id.

*Removal to federal court and amendment of the complaint*

On October 22, 2012, Sentry removed the action to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. §§ 1441, 1446, and 1453. Soon thereafter, plaintiffs filed a first amended class action complaint. That was later followed by a second, a third, and, ultimately, a fourth amended class action complaint.

*The Fourth Amended Complaint*

The fourth amended complaint continued to list Delbert and Maxine Soseeah as the lead plaintiffs and included many of the same factual allegations that were included in the original complaint. The fourth amended complaint, however, expanded substantially upon the original complaint by discussing the impact Weed Warrior and Jordan had upon the Soseeahs' policies and Sentry's response or lack thereof to Weed Warrior and Jordan. To begin with, the complaint alleged that the Soseeahs' purported rejection of UM/UIM coverage on their Sentry policies was, for several reasons, "legally insufficient" under Weed Warrior and Jordan. Dist. Ct. Docket No. 131 at 5. The complaint further alleged that in early 2011, Sentry "sent to every policyholder with a policy then in force that had rejected UM/UIM coverage, including Plaintiff Maxine Soseeah, a form letter [(referred to in this litigation as the "IMPORTANT NOTICE")] and follow-up form letter [(referred to in this litigation as the "FINAL NOTICE")]." Id. at 6. Both letters stated that "[i]n . . . 2010, the New Mexico Supreme Court issued a ruling requiring new information to be provided with Uninsured Motorist . . . coverage selection forms," id., Att. 1, Exh. A at 1, and in turn advised policyholders "that they had to sign a new waiver or 'Your Premium Will Go Up,'" id. at 6. The complaint also alleged that "[i]n January 2012, Defendants sent another form letter to certain policyholders [(referred to in this litigation as the "IMPORTANT NOTICE OF POTENTIAL COVERAGE")], including [Mrs.]

7

Soseeah, advising them that they may have UM/UIM coverage." Id. All of these letters, the complaint alleged, were "misleading and inaccurate" in light of Weed Warrior and Jordan. Id. at 6-7. The complaint further alleged that Sentry's "obligation of good faith and fair dealing to its insureds required it to reform coverage and provide a clear simple notice of reformed coverage and a right to make a claim in a timely fashion after the [two] decision[s]." Id. at 7. With respect to the Soseeahs individually, the fourth amended complaint alleged that "Sentry never notified the[m] . . . that their initial signed purported waiver of UM/UIM coverage was invalid" or that they "in fact under New Mexico law had UM/UIM coverage from the policies' inception through and including the date of their demand." Id. at 8.

The fourth amended complaint included a third plaintiff named John Borrego and added factual allegations relating to Borrego. According to the fourth amended complaint, Borrego purchased a policy of insurance from Sentry that provided coverage for two personal vehicles. The complaint alleged that after Weed Warrior and Jordan were issued, "Sentry had an affirmative obligation to notify . . . Borrego and all other similarly situated New Mexico policyholders that their policies were reformed and that they had UM/UIM coverage in an amount equal to the level of the bodily injury liability limits under their policies." Id. at 11-12. The complaint further alleged that in April 2006, Borrego was seriously injured in a motor vehicle accident. "By letter of November 20, 2012,

8

after the class action complaint in this matter had been filed, . . . Borrego requested that Sentry provide stacked UM/UIM coverage equal to the bodily injury liability coverage on each vehicle." Id. at 12. According to the complaint, "Sentry subsequently agreed to provide stacked UM/UIM coverage to . . . Borrego." Id.

The "Class Action Allegations" section of the fourth amended complaint alleged that "all insurance policies issued by Defendant Sentry to New Mexico policyholders [we]re uniform in all respects material to [the] claims" asserted by the named plaintiffs, id., and that "all forms used by Defendant Sentry for putative rejection of UM/UIM insurance coverage [we]re [also] uniform in all respects material to [the] claims brought" by plaintiffs, id. at 13. The section in turn defined the proposed class as "[a]ll insureds under policies issued in New Mexico by Sentry and its related entities . . . from January 1, 1995 to April 1, 2011 in which UM/UIM coverage was purportedly rejected." Id. The section alleged that "[b]ecause no such rejections were in conformance with New Mexico law as set forth in *Jordan* and *Weed Warrior*, all such insureds [we]re entitled to reformation and proper and adequate notice." Id. The section further alleged that certification of the proposed class was "desirable and proper because there [we]re questions of law and fact . . . common to all members of the Class," including whether Sentry's "acts and practices" amounted to "a breach of its contractual obligations with respect to its New Mexico policyholders," "breached the implied

9

covenant of good faith and fair dealing with respect to the policies issued to New Mexicans," and "constitute[d] unfair or deceptive trade practices or unconscionable trade practices." Id. at 14-15.

The specific claims alleged in the fourth amended complaint, and the forms of relief sought in connection with those claims, were essentially identical to those alleged in the original complaint.

*Dismissal of the TPFA claim*

On July 10, 2014, the district court, acting pursuant to Sentry's motion, dismissed without prejudice plaintiffs' TPFA claim. In doing so, the district court concluded that "[t]he plain language of the statute clearly limits recovery to actual damages and only gives the [New Mexico] Superintendent of Insurance the power to seek injunctions." Dist. Ct. Docket No. 134 at 12-13. The district court emphasized that "[p]laintiffs [we]re free to pursue their claims for injunctive and declaratory relief under another cause of action." Id. at 13.

Although Sentry also moved to dismiss the remainder of plaintiffs' claims on the grounds that there was no allegation of irreparable harm, the district court disagreed and denied Sentry's motion.

*Class certification*

Plaintiffs moved for certification of the class identified in the fourth amended complaint. On September 26, 2014, the district court issued a memorandum opinion and order granting plaintiffs' motion as to the following

10

class:

> All insureds under policies issued in New Mexico by Sentry and its
> related entities . . . from May 20, 2004 to April 1, 2011 in which
> UM/UIM coverage was purportedly rejected. . . . Included as
> subclasses are: (1) insured[s] who received the "IMPORTANT
> NOTICE" and "FINAL NOTICE" . . . ; and (2) insured[s] who
> received the "IMPORTANT NOTICE OF POTENTIAL
> COVERAGE."

Dist. Ct. Docket No. 136 at 3.[1]

In doing so, the district court determined that all four of the prerequisites outlined in Fed. R. Civ. P. 23(a) were satisfied. More specifically, the district court concluded:

> 1) that "the numerosity requirement [wa]s satisfied" because
> "Defendant Sentry conceded in discovery that at least 36,000
> potential claimants signed rejections and may be entitled to
> reformation of their policies," and "Sentry d[id] not contest that
> joinder of so many individuals would be impracticable," id. at 5;
>
> 2) that plaintiffs "met the commonality requirement" because "the
> potential class members . . . experienced the same injury," i.e., "the
> lack of proper notice of the coverage available to the policy holders
> after *Jordan* and *Weed Warrior*," "in spite of the factual differences
> between them," id. at 7;
>
> 3) that plaintiffs "satisfied the typicality requirement," id. at 9,
> because "the proposed class consist[ed] of policyholders who
> received inadequate notice from Defendant Sentry," id. at 8, and thus
> "the claims . . . ar[o]se from the same course of events and all
> proposed class members were subjected to the same harmful
> practices," id. at 8-9; and

---

[1] The record suggests that there are two general categories of insureds who rejected UM/UIM coverage during this time period: (1) those who rejected it without signing any type of rejection form; and (2) those who rejected it by signing a pre-Jordan rejection form.

11

4) that the named plaintiffs were "adequate representatives of the class," id. at 11, and that "[p]laintiffs' attorneys [we]re adequate to represent the class," id. at 13.

The district court in turn concluded that plaintiffs "met the requirements of Rule 23(b)(2) for certification of the proposed class." Id. at 15. In reaching this conclusion, the district court noted that

> [p]laintiffs requested the following remedies: (1) an injunction that prohibits Defendant Sentry from continuing to engage in practices that violate its duties and contractual and legal obligations owed to Plaintiffs and the proposed class; and (2) an injunction requiring Defendant Sentry to give notice to all class members that the *Jordan* and *Weed Warrior* decisions mandate that they are entitled to UM/UIM coverage equal to liability coverage, and of their right to make a UM/UIM claims notwithstanding the fact that they had previously rejected UM/UIM coverage, because the rejection was invalid.

Id. at 14-15. In other words, the district court concluded that this requested injunction was "sufficiently specific . . . to meet the requirements of Rule 23(b)(2)." Id. at 15.

In sum, the district court concluded that plaintiffs "established the requirements for certification of the proposed class pursuant to Federal Rule of Civil Procedure 23(b)(2)" and that "[a] class action [wa]s the fairest and most efficient manner of litigating the injunctive claims at issue in the . . . case." Id.

*Sentry's appeal*

Sentry sought and was granted permission by this court pursuant to Fed. R. Civ. P. 23(f) to appeal the district court's interlocutory order granting plaintiffs'

12

motion for certification of the class identified in the fourth amended complaint.

II

*Standards of review*

"We review the district court's decision to certify the class for an abuse of discretion." Tennille v. W. Union Co., 785 F.3d 422, 430 (10th Cir. 2015). "The district court abuses its discretion when it misapplies the Rule 23 factors—either through a clearly erroneous finding of fact or an erroneous conclusion of law—in deciding whether class certification is appropriate." CGC Holding Co. v. Broad & Cassel, 773 F.3d 1076, 1085-86 (10th Cir. 2014). "Our review is only de novo to the extent we must determine whether the district court applied the correct standard." Id. at 1086. "In the end, as long as the district court applies the proper Rule 23 standard, we will defer to its class certification ruling provided that decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand." Id. (internal quotation marks and brackets omitted).

*Class certification standards*

"Class certification is governed by Federal Rule of Civil Procedure 23." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011). Rule 23(a) requires the party seeking class certification to satisfy four prerequisites:

> One or more members of a class may sue or be sued as representatives on behalf of all members only if:
> (1)     the class is so numerous that joinder of all members is

13

impracticable;
(2)    there are questions of law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  Wal-Mart, 131 S. Ct. at 2548.  In this case, the plaintiffs and the district court relied on Rule 23(b)(2), which states:

the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2).

*The district court's commonality determination*

Sentry's arguments on appeal focus on the district court's commonality determination.  As discussed in greater detail below, we agree with Sentry that the district court abused its discretion in concluding that the general class it certified satisfied Rule 23(a)(2)'s commonality requirement.

*a) The meaning of Rule 23(a)(2)'s commonality requirement*

In Wal-Mart, the Supreme Court expounded on the meaning of Rule 23(a)(2)'s commonality requirement:

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury."  [*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)].  This does not mean merely that they have all suffered a violation of the same provision of law.  Title VII, for example, can be violated in many ways—by intentional

14

discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company.  Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once.  Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.  * * *

Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.  We recognized in *Falcon* that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," 457 U.S., at 160, 102 S. Ct. 2364, and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *id.*, at 161, 102 S. Ct. 2364; see *id.*, at 160, 102 S. Ct. 2364 ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable").  Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.  "'[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"  *Falcon*, *supra*, at 160, 102 S. Ct. 2364 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S. Ct. 2454, 57 L.Ed.2d 351 (1978); some internal quotation marks omitted).  Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation.  *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676–677 (C.A.7 2001) (Easterbrook, J.).

131 S. Ct. at 2551-52 (footnote omitted).

15

*b) Did the district court err in finding any class-wide injury?*

Sentry argues that the district court's "most glaring error was finding a common injury where the vast majority of class members *suffered no legally cognizable injury at all*." Aplt. Br. at 37 (emphasis in original). More specifically, Sentry asserts that "Plaintiffs have no right in contract, tort or any other law to a purely inchoate 'notice' from the insurance company—without ever tendering a claim for benefits—that their automobile insurance policies were being reformed retroactively to provide UM coverage where it had been rejected without the required *Jordan* disclosures." Id. at 39. "And," Sentry argues, "Plaintiffs neither claim, nor is it so, that the New Mexico Department of Insurance has required any such notice." Id. In short, Sentry argues that "[p]urported lack of notice of the change in UM law after *Jordan* and *Weed Warrior* . . . is not a ***common*** injury or, indeed, ***any injury at all***." Id. at 42 (emphasis in original).

To determine whether the certified class of plaintiffs suffered a common and legally cognizable injury, we focus our attention on whether the plaintiffs have alleged the violation of any recognized legal duty on the part of Sentry. As the Seventh Circuit recognized in a somewhat similar proposed class action case, "a claim of injury is not cognizable unless it results from the breach of a recognized legal duty owed to the plaintiff." Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883, 889 (7th Cir. 2011). Any such recognized legal duty on

16

the part of Sentry in this case would have to arise under one of three sources identified in the claims that remain pending before the district court: (1) the UPA, (2) New Mexico contract law, which provides the basis for plaintiffs' breach of contract claim against Sentry, or (3) New Mexico tort law, which provides the basis for plaintiffs' bad faith claim against Sentry.

The UPA prohibits certain types of acts that occur "in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce." N.M. Stat. Ann. § 57-12-2(D) (defining the phrase "unfair or deceptive trade practice"). The bulk of plaintiffs' UPA allegations, and the ones that the district court specifically focused upon in granting plaintiffs' motion for class certification, concern the steps that Sentry took, or allegedly failed to take, in notifying existing policyholders of the impact of Weed Warrior and Jordan. Because that alleged conduct occurred after, rather than in connection with, the sale of the policies at issue, we conclude it falls outside of the scope of the plain language of the UPA. Consequently, we conclude that the UPA did not impose any duty on Sentry with respect to notifying existing policyholders of the impact of Weed Warrior and Jordan.[2]

_____

[2] To be sure, the fourth amended complaint alleges that Sentry violated the UPA, in part, by "using rejection forms for UM/UIM coverage that failed to inform consumers of their choices adequately." Dist. Ct. Docket No. 131 at 17. Presumably, this language was intended to focus on Sentry's acts at the time it

(continued...)

Plaintiffs also allege in the fourth amended complaint that Sentry breached the terms of the various policies of insurance that are encompassed by the certified class. But plaintiffs have not identified a single contractual provision in any of the policies at issue, let alone one that is contained in all of the policies at issue, that would have imposed a duty on Sentry to inform the certified class of the impact of <u>Weed Warrior</u> and <u>Jordan</u>.[3] Consequently, we conclude that the plaintiffs' breach of contract claim cannot give rise to the common injury required by Fed. R. Civ. P. 23(a)(2) for class certification.

---

[2](...continued)
issued the respective policies of insurance to the members of the certified class. Further, in their motion for class certification, plaintiffs suggested that Sentry continued using improper rejection forms for UM/UIM coverage after the issuance of <u>Weed Warrior</u> and <u>Jordan</u>. Because the UPA's definition of the phrase "unfair or deceptive trade practice" appears to us to encompass the sale or issuance by an insurer of a policy of insurance to an insured, we conclude that this portion of plaintiffs' UPA claim identified a legally cognizable duty that Sentry allegedly violated.

It does not appear to us, however, that the district court took these particular allegations into consideration in concluding that the general certified class satisfied Rule 23(a)(2)'s commonality requirement. And, in any event, we conclude that this alleged violation does not give rise to an injury common to either the general certified class or either of the two subclasses identified by the district court.

Of course, the district court is free on remand to take these particular allegations into consideration in deciding whether to certify a new and separate class (i.e., a class distinct from the general class and subclasses that it previously certified).

[3] Under <u>Wal-Mart</u>, it is not enough for plaintiffs to merely allege that some policy provision imposes this duty. Instead, plaintiffs must identify with specificity a common policy provision that imposes this duty. <u>See</u> 131 S. Ct. at 2551. Notably, plaintiffs have failed to do so.

18

That leaves only plaintiffs' bad faith tort claim. Under New Mexico law, each insurance contract includes "an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract."[4] Dairyland Ins. Co. v. Herman, 954 P.2d 56, 60 (N.M. 1997). "[T]his means that an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration." Id. at 61 (internal quotation marks omitted). "[T]he implied covenant of good faith and fair dealing protects against only bad faith or wrongful and intentional conduct that injures the other party's rights under the contract . . ." Azar v. Prudential Ins. Co. of Am., 68 P.3d 909, 927 (N.M. Ct. App. 2003).

Even if we were to assume that Sentry acted in bad faith with respect to all of the policyholders identified in the general certified class by failing to inform them of the impact of Weed Warrior and Jordan on their respective policies, we are not persuaded that plaintiffs have alleged, let alone made any attempt to establish, that such conduct injured every policyholder's rights under their respective policies. Indeed, we fail to see how the purported lack of notice and information could have injured a policyholder in the absence of a viable claim against Sentry for UM/UIM benefits. And there appears to be little dispute that

[4] The class certified by the district court is not limited to Sentry policyholders, and instead includes anyone that could be insured under any Sentry policy issued during the relevant time period. As Sentry aptly notes, however, it "has no duty to send any notice to unknown insureds with unknown—*let alone no*—UM claims." Aplt. Br. at 42 (emphasis in original).

19

many, if not most, of the certified class members do not have any such claim at all. As a result, there is simply no common injury among the general certified class that would satisfy the requirements of Fed. R. Civ. P. 23(a)(2) for purposes of the plaintiffs' bad faith claim.[5]

To be sure, plaintiffs suggest that the New Mexico Supreme Court's decision in Salas v. Mountain States Mut. Cas. Co., 202 P.3d 801 (N.M. 2009), supports their bad faith claim and indicates that an insurer's failure to disclose necessarily gives rise to a valid bad faith claim under New Mexico state law. In other words, plaintiffs suggest that, under Salas, an insurer injures an insured merely by failing to disclose to the insured relevant information about the policy at issue. We disagree.

Salas dealt primarily with a breach of contract claim brought by an injured

---

[5] Relatedly, the injunction sought by plaintiffs in connection with their bad faith claim would not "be a final remedy." Kartman, 634 F.3d at 886. To the contrary, the requested injunctive relief, i.e., "compel[ling] . . . Sentry to give notice to all class members of the effect of the Jordan and Weed Warrior decisions on their UM/UIM coverage," Dist. Ct. Docket No. 131 at 26 (Fourth Amended Complaint), would, at best, "only lay an evidentiary foundation for subsequent individual determinations of [UM/UIM] liability and damages," Kartman, 634 F.3d at 886. And "the class-action device is not appropriate for resolving such highly individualized questions of fact" (not to mention that such questions are not alleged at all in the Fourth Amended Complaint). Id. at 891; see also Jamie S. v. Milwaukee Pub. Sch., 668 F.3d 481, 499 (7th Cir. 2012) ("[A] claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final.").

20

class-two insured who had been denied UIM benefits by the defendant insurer, and the key question before the New Mexico Supreme Court was whether the insurer could defend against that claim on the basis of an exclusionary provision that it failed to disclose to the insured. The New Mexico Supreme Court, after outlining the circumstances under which an insurer must disclose policy information to a class-two insured, concluded that the defendant insurer had violated this duty of disclosure to the plaintiff insured and was therefore estopped from enforcing against the insured an undisclosed exclusionary provision to limit or deny the insured's entitlement to UIM benefits under the policy. 202 P.3d at 807-09.

In our view, there are at least two reasons why Salas fails to support the bad faith theory urged by the plaintiffs in this case. First, nothing in Salas states that an insurer's failure to disclose, standing alone, gives rise to a bad faith claim. Indeed, although the plaintiff in Salas asserted a bad faith claim in addition to her breach of contract claim, the New Mexico Supreme Court did not address the bad faith claim at all (because the New Mexico Court of Appeals failed to address that claim in the first instance). Thus, the holding in Salas must necessarily be read as limited to breach of contract claims brought by an insured against an insurer.

Second, to the extent that the New Mexico Supreme Court in Salas touched upon an insurer's duty of good faith to its insured (and, again, it did so only in the context of addressing the plaintiff's breach of contract claim), it simply repeated

21

the principles that we have already recognized, i.e., that the implied covenant of good faith and fair dealing requires "that the insurer will not injure its [insured]'s right to receive the full benefits of the contract."  202 P.3d. at 805 (quoting Dairyland Ins. Co. v. Herman, 954 P.2d 56, 60 (N.M. 1997)).  Nothing in this language supports the plaintiffs' theory that an insurer's failure to give notice, without any resulting infringement upon an insured's rights under the contract, can give rise to a valid bad faith claim.

Because plaintiffs have failed to establish that all members of the general certified class suffered the common injury required by Rule 23(a)(2), we conclude that the district court abused its discretion in certifying the general class.[6]

*The subclasses identified by the district court*

The district court, in addition to certifying the general class, identified the following two subclasses: "(1) insured[s] who received the 'IMPORTANT NOTICE' and 'FINAL NOTICE' . . . ; and (2) insured[s] who received the 'IMPORTANT NOTICE OF POTENTIAL COVERAGE.'"  Dist. Ct. Docket No. 136 at 3.

The members of the first subclass were Sentry policyholders who, in early 2011, received from Sentry the form letters entitled "IMPORTANT NOTICE" and "FINAL NOTICE."  Neither of these letters informed the recipient policyholders

---

[6] Having reached this conclusion, we find it unnecessary to address Sentry's other challenges to the district court's commonality determination regarding the general class.

22

that their policies had been automatically reformed, without any additional premium, to include UM/UIM coverage equal to the liability limits of the policies. Instead, the letters stated that (a) the policyholders had to return the enclosed UM Coverage Selection Form, (b) Sentry could keep the UM/UIM limits below the liability limits of the policies if the policyholders so chose, and (c) Sentry could charge the policyholders an additional premium for UM/UIM coverage in an amount equal to liability coverage.

The members of the second subclass were Sentry policyholders who, in 2012, received from Sentry a form letter entitled "IMPORTANT NOTICE OF POTENTIAL COVERAGE." Each member of this subclass was purportedly involved in some type of accident that potentially implicated UM/UIM coverage under their respective Sentry policies. The letter mentioned Weed Warrior and Jordan by name and purported to outline the potential effects of these decisions.

Notably, Federal Rule of Civil Procedure 23(c)(5) states that "[w]hen appropriate, a class action may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). Thus, notwithstanding our conclusion that the general class certified by the district court fails to meet the commonality requirements of Rule 23(a)(2), the question remains whether either or both of the subclasses identified by the district court can independently satisfy the requirements of Rule 23 and be allowed to proceed.

Because the district court's certification ruling did not expressly address

23

the Rule 23 factors as they applied to each of the identified subclasses, we do not have enough information to determine whether the district court abused its discretion in certifying the two subclasses. Consequently, we direct the district court on remand to address these issues.

## III

The district court's order is REVERSED and the case is REMANDED to the district court for further consideration of plaintiffs' motion for class certification. Sentry's unopposed motion for leave to file exhibit under seal is GRANTED.